DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Bernadette E. ("Mother"), has appealed from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I {¶ 2} Mother is the natural mother of T.E., born May 17, 1995, and L.E., born June 19, 2000. The father of the children, Mother's ex-husband,[1] is not a party to this appeal. During July 2003, CSB removed these children from their home pursuant to Juv.R. 6 because Mother had left them home alone while she went to see her boyfriend, whose home was a twenty-minute drive from hers. On her return trip, Mother was pulled over by the police and cited for driving under the influence of alcohol. Mother informed the police at that time that she had left her children home alone.
 {¶ 3} CSB focused its case planning efforts on its primary concerns about Mother's parenting ability: her history of alcohol and substance abuse, a history of domestic violence in the home, and her lack of stable housing and employment. During the next 23 months, however, Mother made "minimal progress" on her case plan. On January 19, 2005, CSB moved for permanent custody of both children. Following a hearing, the trial court found that permanent custody was in the best interests of the children and that the children could not or should not be returned to Mother's home because she had failed to remedy the conditions that led to the removal of the children. Consequently, the trial court terminated Mother's parental rights and placed T.E. and L.E. in the permanent custody of CSB. Mother has timely appealed, raising three assignments of error, two of which will be consolidated for ease of review.
 II Assignment of Error Number One
"THE TRIAL COURT ERRED IN NOT APPOINTING COUNSEL FOR THE SUBJECT CHILDREN."
 {¶ 4} Mother has asserted that the trial court erred in not appointing counsel for the children. A review of the record reveals, however, that the trial court did appoint an attorney to serve in the dual capacity of attorney and guardian ad litem for the children. Although Mother has asserted that the trial court record includes no journal entry explicitly appointing an attorney to serve in this dual capacity, she is mistaken. Through a journal entry filed August 11, 2003, the trial court appointed Attorney Tony Paxton to serve as both attorney and guardian ad litem for the children. He continued to serve in that capacity throughout the remainder of the case.
 {¶ 5} Mother has also asserted that, because T.E. had expressed a desire to be reunited with her, the trial court should have appointed independent legal counsel to represent the children. "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel incertain circumstances." In re Williams, 101 Ohio St.3d 398,2004-Ohio-1500, at syllabus. (Emphasis added.) Although theWilliams court did not specify what "certain circumstances" require the appointment of independent counsel, it did affirm the decision of the Eleventh District Court of Appeals, which held that the trial court must appoint independent legal counsel when it becomes apparent that a conflict exists between the views of the attorney/guardian ad litem and the wishes of the children.[2]
 {¶ 6} There was evidence presented at the permanent custody hearing that T.E. wanted to return to Mother's home. As the guardian ad litem explained, however, in his fifteen years' experience as a guardian ad litem, he has found that most children of T.E.'s age state that they want to return home. The guardian ad litem explained that he did consider the stated wishes of T.E., but did not believe that it was in her best interest to return to Mother's home. He recommended that both children be placed in the permanent custody of CSB.
 {¶ 7} Although there was an apparent conflict between the wishes of T.E. and the recommendation of the guardian ad litem, none of the parties raised a challenge at the hearing to the ability of the guardian ad litem to continue serving in the dual capacity of attorney and guardian ad litem for the children. As this Court stated in In re K.H., 9th Dist. No. 22765,2005-Ohio-6323, at ¶ 41, "where no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal." Id., citingIn re B.B., 9th Dist. No. 21447, 2003-Ohio-3314, at ¶ 7. Other appellate districts have also held that this issue must be raised in the trial court to preserve it for appellate review. See, e.g., In re Graham, 4th Dist. No. 01CA57, 2002-Ohio-4411, at ¶ 31-33; In re Brittany T. (Dec. 21, 2001) 6th Dist. No. L-01-1369.
 {¶ 8} Mother has not asserted that the trial court committed plain error, nor has she explained why this Court should delve into this issue for the first time on appeal. Although some courts have held that a parent cannot waive the issue of the children's right to counsel because such a result would unfairly deny the children their right to due process, see, e.g., In reMoore, 158 Ohio App.3d 679, 2004-Ohio-4544, at ¶ 31, we disagree that the reasoning applies to this case. Mother has not appealed on behalf of her children and is not asserting their rights on appeal. This is Mother's appeal of the termination of her own parental rights and she has standing to raise the issue of her children's right to counsel only insofar as it impacts her own parental rights. See In re Smith (1991), 77 Ohio App.3d 1, 13.
 {¶ 9} The Ohio General Assembly and the Ohio Supreme Court have required courts to expedite cases involving the termination of parental rights, to prevent children from lingering in foster care for a number of years. See, e.g., R.C. Chapter 2151; App.R. 11.2. Mother should not be permitted to impose an additional delay in the proceedings by raising a belated challenge for the first time on appeal, under the auspices of defending her children's due process rights. She had the opportunity at the permanent custody hearing to timely assert their rights, and therefore her derivative rights, but she chose not to. This Court is not inclined to reward a parent for sitting idly on her rights by addressing an alleged error that should have been raised, and potentially rectified, in the trial court in a much more timely fashion. The first assignment of error lacks merit.
 Assignment of Error Number Two
"THE JUDGMENT OF THE TRIAL COURT THAT THE CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 Assignment of Error Number Three
"THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 10} Mother has contended that the trial court erred in granting CSB's motion for permanent custody because the agency failed to establish each of the prongs of the permanent custody test.
 {¶ 11} Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 12} Each prong of the permanent custody test requires proof by clear and convincing evidence. See R.C. 2151.414(B)(1). Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. Mother has asserted that CSB did not meet its burden on either prong of the test. We disagree.
 {¶ 13} The trial court found that the first prong of the test was satisfied because T.E. and L.E. could not or should not be placed with either parent within a reasonable time. Specifically, the trial court found that CSB had established that Mother "failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside [their] home." R.C. 2151.414(E)(1).
 {¶ 14} The following evidence supported the trial court's conclusion that Mother had failed to substantially remedy the conditions that caused T.E. and L.E. to be placed outside the home.
 {¶ 15} This case began after Mother left her children, then ages three and eight, at home alone and drove for twenty minutes to her boyfriend's house. On the return trip, the police stopped Mother and cited her with driving under the influence of alcohol, her second such offense in less than two years.[3] Mother was also charged with child endangerment for leaving her children home alone.
 {¶ 16} Mother's problem with substance abuse was one of the primary focuses of her case plan, with a goal that she achieve and maintain sobriety. At various times during the case planning period, however, Mother tested positive for alcohol and cocaine. Mother also tested positive for opiates during this time, but CSB did not dispute that she had a prescription for Vicodin because she had been injured during an altercation with her boyfriend. The case worker expressed concern, however, that Mother continued using Vicodin for an entire month after the incident occurred.
 {¶ 17} Although Mother did eventually complete an outpatient substance abuse program, she failed to satisfy the requirements of her follow-up treatment: that she attend Alcoholics Anonymous ("AA") meetings once or twice a week and that she submit urine samples for drug an alcohol screening three times per week.
 {¶ 18} Mother testified that she was attending AA meetings regularly, but she submitted documentation to verify her attendance at only 12 meetings. On cross-examination by the guardian ad litem, Mother was unable to explain much about AA's 12-step program. For example, she could not identify the first step of the program or what step she was currently on. Mother also testified that she did not have an AA sponsor at that time. The trial court reasonably concluded that Mother had not been attending AA meetings on a regular basis.
 {¶ 19} Although Mother insisted that she had achieved sobriety, she made no demonstration to CSB that she had. Mother was required to submit urine samples for drug screening three times per week throughout the case planning period, for a total of well over 200 samples, but she submitted only 54. Of the 54 samples that she did submit, several of them tested positive for drugs or alcohol.
 {¶ 20} CSB has indicated in other cases that when a parent only sporadically submits urine samples, the agency reasonably concludes that they are not maintaining sobriety. For example, on one specific occasion when Mother visited her probation officer, the probation officer suspected that she was "high" so he ordered her to go immediately submit a urine sample for screening, but Mother did not submit a sample that day. According to Mother's testimony, she did not have time to submit the sample because she had to get back to work. The probation officer testified, however, that Mother told him she did not have time to submit the sample because she had a tanning appointment. The guardian ad litem also emphasized that Mother did not even seem to recognize that she had a problem with alcohol.
 {¶ 21} Another key concern of CSB was Mother's history of domestic violence in the home that predated the removal of the children. Mother had a violent relationship with her ex-husband as well as with another man with whom she was romantically involved during this period. During the case planning period, Mother did little to remedy her destructive pattern of involving herself in violent and abusive relationships. In fact, additional incidents of domestic violence occurred, two of which were severe enough to come to the attention of CSB.
 {¶ 22} On one occasion, Mother became involved in a fight with her ex-husband when the children were present. During that incident, a glass door was broken and T.E. was injured by some of the broken glass from the door. T.E. called "911" for assistance. Although Mother testified that she did not fight in front of her children, this apparently was not an isolated incident. T.E.'s counselor testified that T.E. told her about repeatedly being exposed to violence between Mother and T.E.'s father as well as between Mother and her boyfriend.
 {¶ 23} During another incident, Mother was involved in an altercation with her boyfriend and was injured so severely that she was visibly bruised on her face and was unable to walk. Although the caseworker talked to Mother and discussed options of how Mother could get assistance, such as going to the battered woman's shelter or to having her mother stay with her, Mother instead chose to return to the home of her ex-husband, with whom she also had a violent past.
 {¶ 24} Although Mother did eventually obtain a divorce from her husband, she had done nothing to address her long history of involving herself in violent relationships. Her case plan required her to obtain professional help through anger management classes and relationship counseling. She did not complete relationship counseling and she failed even to start anger management classes.
 {¶ 25} Mother failed to obtain a psychological assessment, also required by her case plan, to address the concerns of CSB that she suffered from depression. Mother contended that she did not obtain a psychological assessment because she could not afford it. The evidence demonstrated, however, that Mother opted to spend large sums of money on other things, such as purchasing a car at a time when her driver's license was suspended, rather than using the money to take steps toward reunification with her children.
 {¶ 26} Mother also made little progress toward achieving stability in her housing or employment. At the time of the permanent custody hearing, Mother had adequate housing and was employed, but she had not demonstrated any stability. Mother had been employed at four different part-time jobs and lived in four different places during the case planning period.
 {¶ 27} There was ample evidence before the trial court from which it could conclude that Mother failed to substantially remedy the conditions that caused CSB to remove T.E. and L.E. from the home. Thus, the first prong of the permanent custody test was satisfied.
 {¶ 28} Next, Mother challenges the trial court's conclusion that permanent custody was in the children's best interests. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C.2151.414(D)(1)-(4).[4]
 {¶ 29} Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. SeeIn re Smith (Jan. 2, 2002), 9th Dist. No. 20711, at 6; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, at ¶ 24.
 {¶ 30} Although the children were initially placed under protective supervision in their father's home, they were later removed from his home due to domestic violence and placed in the temporary custody of CSB. The evidence demonstrated that Mother attended weekly visits with her children on a regular basis and that there was a bond between Mother and both children. Mother's visits failed to progress beyond weekly, supervised visits, however, and the visits were even highly supervised for a period. CSB remained concerned about Mother's problem with drugs and alcohol and the history of domestic violence in the home. During the case planning period, as explained above, the children were exposed to violence and T.E. was even injured by glass from a door that was broken during one fight.
 {¶ 31} According to the guardian ad litem, who observed Mother's interaction with her children, Mother acted more like a sibling to her children than a parent. Mother liked to play with T.E. and L.E., but she did not talk much to them, nor did she set appropriate boundaries for the younger child, L.E. In fact, during the visits, it was often T.E. who stepped in to set boundaries and correct the behavior of L.E. The guardian ad litem noted that, for a long time, T.E. had acted as a parent to L.E. The guardian ad litem was also concerned that T.E. had spent a great deal of time worrying about her mother and her violent relationships.
 {¶ 32} The guardian ad litem spoke on behalf of the children. Although he indicated that T.E. had expressed a desire to return to Mother's home, he emphasized that T.E. had been forced to act in a parental capacity in that home because Mother acted more like a child. The guardian ad litem recommended that the children be placed in the permanent custody of CSB, emphasizing that the children should be able to move on to a better life and not have to worry about their mother and her problems.
 {¶ 33} The custodial history of the children included a period of almost two years living outside Mother's home. During the time that the children did live with their mother, they were exposed to ongoing violence in the home between their parents and T.E. had assumed the role of caretaker to her younger brother. As the counselor for T.E. stressed, she continued to have the same concerns for the safety and welfare of these children as she did in 2003.
 {¶ 34} There was also evidence that each child was in need of a legally secure permanent placement and there were no other permanent placement options available such as legal custody to a relative. Thus, the trial court reasonably concluded that permanent custody was the only permanency option available.
 {¶ 35} Given the evidence before the trial court, we find that it did not lose its way concluding that permanent custody was in the best interests of T.E. and L.E. The second and third assignments of error are not well taken.
 III {¶ 36} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Moore, J. concur.
[1] Although it is undisputed that the couple obtained a divorce, it is not clear from the record when the divorce occurred.
[2] It should be noted that, if an attorney is serving in the dual capacity of attorney and guardian ad litem for the child and a conflict arises between the responsibilities of those two roles, both R.C. 2151.281(H) and Juv.R. 4(C) explicitly require that the trial court appoint a new guardian ad litem, not a new attorney.
[3] Although the trial court indicates that this was Mother's fourth offense, this Court found no such evidence in the record.
[4] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.