DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Linda H. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms. I {¶ 2} Mother is the natural mother of R.H., born January 26, 1994. The child's father relinquished his parental rights and is not a party to this appeal. R.H. was placed in the emergency temporary custody of CSB on November 13, 2006 due to concerns about her mental health and the potential threat she posed to herself and others. While at school, R.H. had written a note that expressed her desire to kill herself or her father.
 {¶ 3} At the time of her removal from the home, R.H. was living in the home of her father who was divorced from Mother. R.H. had been placed in the legal custody of her father in *Page 2 
May 2005, at the conclusion of a prior juvenile court case. CSB had filed the prior case in December 2004 after Mother physically abused R.H. by beating her with a belt. Although that incident resulted in criminal charges against Mother, the ultimate outcome of those charges is not clear from the record. Since the 2004 incident of abuse, however, the juvenile court has not permitted Mother to have unsupervised contact with R.H.
 {¶ 4} During the pendency of this case, Mother and R.H. visited with each other only once. R.H. was so upset by the visit that her counselor advised against any further visits until Mother began complying with the counseling and treatment requirements of the case plan. Mother continued to deny that she had ever abused R.H. and she refused to get a mental health assessment.
 {¶ 5} On March 18, 2008, CSB moved for permanent custody of R.H. Following a hearing on the motion, the trial court terminated Mother's parental rights and placed R.H. in the permanent custody of CSB. Mother appeals and raises two assignments of error.
 II Assignment of Error Number One "THE [TRIAL] COURT ERRED AND ABUSED ITS DISCRETION IN ITS AWARD OF PERMANENT CUSTODY OF THE MINOR CHILD, AS STATE FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE AWARD OF PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE MINOR CHILD PURSUANT TO R.C. 2151.414(B)(1)."
 {¶ 6} Through her first assignment of error, Mother contends that the trial court's decision to terminate her parental rights was not supported by the evidence presented at the permanent custody hearing. Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been *Page 3 
in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95,99.
 {¶ 7} The trial court found that the first prong of the permanent custody test was satisfied because R.H. had been in the temporary custody of CSB for more than 12 of the prior 22 months and Mother does not dispute that finding. Mother challenges only the trial court's finding that permanent custody was in the best interest of R.H. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1)-(5).
 {¶ 8} The interaction and interrelationship between Mother and R.H. had been limited since R.H. was removed from Mother's custody during a prior juvenile court case in 2004. CSB *Page 4 
filed the prior case after Mother beat R.H. with a belt, leaving the child badly bruised. Mother was allowed supervised visitation for a period of time, but the visits were later stopped because R.H.'s counselor was concerned that the visits negatively impacted R.H.'s mental health. R.H.'s counselor allowed one meeting between R.H. and Mother during the pendency of this case. The counselor testified that R.H. was clearly uncomfortable and filled with anxiety throughout the visit and Mother seemed to be unaware that there was a problem. The counselor expressed concern that Mother would not acknowledge that she ever abused R.H., nor has she otherwise addressed the problems in her relationship with R.H. The counselor and R.H. also had concerns about Mother's mental health and her refusal to address that problem. The counselor would not allow any further visits until Mother began complying with the treatment goals of the case plan. Because Mother never complied with those goals, there were no further visits between Mother and R.H. during the pendency of this case.
 {¶ 9} Mother's testimony tended to confirm the testimony of several witnesses that Mother failed to recognize that she had any parenting problems. Mother would not admit that she had a mental health problem or that R.H. had concerns about her mental health. Mother conceded that R.H. was uncomfortable around her, but she explained that there did not seem to be a clear reason for the child's discomfort. Mother would not admit that she ever abused R.H., but insisted that she had only disciplined the child with a belt. She testified that R.H. feared her because she is her mother. Mother seemed to have no understanding that there were serious problems in her relationship with R.H. Despite having very little contact with R.H. for more than three years and only one visit during the pendency of this case, Mother testified that she is the closet person to R.H. in the whole world. *Page 5 
 {¶ 10} R.H. expressed her wishes that she not be returned to Mother's care and would prefer to stay in the foster care system because she felt safe there. The guardian ad litem, R.H.'s counselor, and the caseworker all testified that they believed that R.H. genuinely did not want to live with Mother and was not just expressing the fleeting wishes of a teenager who was mad at her mother. The guardian ad litem opined that permanent custody was in the best interest of R.H. The guardian ad litem explained that R.H. feared her mother due to past physical and mental abuse. R.H. was also concerned that Mother had mental health problems but did not participate in counseling or other treatment because she denied that there is a problem. R.H. was particularly concerned that Mother would not admit that she abused R.H., so she had not taken the first step toward remedying the problem.
 {¶ 11} R.H. had not lived in the custody of Mother since December 2004 when she was removed from the home due to Mother's physical abuse. For the next three and one-half years prior to the permanent custody hearing, R.H. lived out of her mother's custody and had only limited contact with her. She had lived in the temporary custody of CSB for approximately 18 months. Prior to the commencement of this case, R.H. had lived in her father's custody for approximately 18 months. During a prior case filed by CSB, R.H. had lived out of her mother's custody for approximately five months.
 {¶ 12} R.H. was in need of a legally secure permanent placement. One of the case workers testified that she had contacted several relatives as potential placements for R.H., but that they were not willing or able to provide a permanent placement for her. Although R.H. had lived with her paternal grandparents at one point, they were no longer willing to provide a home for her due to her mental health issues. The trial court reasonably concluded that a legally secure permanent placement could only be achieved through a grant of permanent custody to CSB. *Page 6 
 {¶ 13} Finally, the trial court was required to consider whether one of the factors enumerated in R.C. 2151.414(E)(7) through (11) applied in this case. R.C. 2151.414(E)(11) applied here because the juvenile court had terminated Mother's parental rights to a sibling of R.H. Mother's parental rights were terminated in that case primarily due to her unstable mental health. Although Mother went for a mental health assessment in July 2007, she refused to allow CSB to have any contact with the service provider, so the assessment included only the information that she reported. The caseworker explained to Mother that, because her assessment was not based on complete information that included Mother's long history of exhibiting odd behavior and the problems in her relationships, it was not acceptable to CSB. Mother still had not obtained a mental health assessment that was acceptable to CSB and she had not begun to address her mental health issues. The record in this case is filled with references to Mother's erratic and irrational behavior and her continued refusal to acknowledge that she has a mental health problem that requires treatment.
 {¶ 14} The trial court had substantial evidence before it to support its conclusion that permanent custody was in the best interest of R.H. The first assignment of error is overruled.
 Assignment of Error Number Two "THE COURT ERRED WHEN IT DID NOT GRANT THE SIX MONTH [EXTENSION] AS REQUESTED BY MOTHER UNDER R.C. 2151.415(D)[.]"
 {¶ 15} Mother next contends that the trial court erred in failing to grant her request for a six-month extension of temporary custody. Mother does not dispute that the trial court's decision to grant or deny a request for an extension of temporary custody is determined, at least in part, based on whether such an extension would be in the best interest of the child. See, e.g., In re P.B., 9th Dist. No. 23276,2006-Ohio-5419, at ¶ 36. Because this Court has determined that permanent custody to CSB was in the best interest of R.H., it would be inconsistent to conclude *Page 7 
that an extension of temporary custody would also be in her best interest. Mother's second assignment of error is overruled.
 III {¶ 16} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, J. MOORE, P. J. CONCUR *Page 1