[Cite as *In re M.Z.*, 2012-Ohio-3194.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: M.Z.
     M.Z.
     S.Z.
     I.Z.

C.A. Nos.    11CA010104
                11CA010105
                11CA010106
                11CA010107
                11CA010109
                11CA010110
                11CA010111
                11CA010112

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.   09JC27477
              09JC27478
              09JC27664
              09JC27665

DECISION AND JOURNAL ENTRY

Dated: July 16, 2012

CARR, Judge.

{¶1}    Appellants, Lori M. ("Mother") and Miguel Z. ("Father"), separately appeal from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their four minor children and placed the children in the permanent custody of Lorain County Children Services Board ("LCCS"). This Court affirms.

I.

{¶2}    Mother and Father are the parents of Mi.Z., born July 15, 2004; S.Z. and I.Z., twin girls, born October 13, 2006; and Ma.Z., born March 28, 2008. At the time of the permanent custody hearing, the children were seven, four, and three years of age.

{¶3}    LCCS became involved with the family in July 2009 when Mother requested assistance with their finances and an inability to provide for the needs of the children.  The household utilities were being shut off and the family was facing eviction.  In addition, Father was arrested on an outstanding warrant.   Father had a criminal record that included one conviction for domestic violence, two convictions for endangering children, and six drug-related convictions, all since 2005.  The LCCS intake worker helped Mother arrange for a temporary placement of the children under a safety plan.  The children were first placed at a local shelter and then with relatives.  Mi.Z. and Ma.Z. were placed with a paternal aunt in Ohio, and the twins were placed with a maternal uncle in Pennsylvania.

{¶4}    Within two months, the agency filed complaints in juvenile court.  On November 20, 2009, the court adjudicated all four children to be neglected and dependent.  At disposition, the court ordered Mi.Z. and Ma.Z. into the temporary custody of the agency and the agency placed them in a foster home.  At the same time, the court ordered I.Z. and S.Z. into the temporary custody of relatives.  The court adopted a case plan which required both parents to address concerns of domestic violence, substance abuse, mental health, and housing.  Father was additionally required to engage in counseling and anger management.  Eventually, the twins were moved from one relative placement to another and then to a foster home.

{¶5}    Over the course of the next year, the parents made some progress on their case plans and the court agreed to place all four children in the temporary custody of Mother with protective supervision in the agency.  Mi.Z. and MaZ. were placed with Mother on October 19, 2010 and the twins were placed with her on November 1, 2010.  That arrangement lasted less than two months.  On December 12, 2010, a domestic violence incident occurred between Mother and Father in the presence of the children.  Mother reported injuries to her head and

wrist. Father was arrested and the children entered emergency temporary custody. Mother faced eviction from her home once again. Mother was not permitted to stay at the local shelter because she had previously brought Father there in violation of the rules. Realizing that she lacked the means to provide for her children, Mother asked the agency to return them to their foster homes while she went to Pennsylvania to stay with relatives. New case plans were developed, but there was little evidence of further progress by the parents. In the ensuing six months, Father attended five visits with his children and Mother attended none. She communicated with her young children only by telephone.

{¶6} On April 4, 2011, the agency moved for permanent custody of the children, alleging that they had been the temporary custody of the agency for 12 or more months of a consecutive 22-month period and that permanent custody was in the best interest of the children. Following a hearing, the trial court granted the agency's motion. Mother and Father separately appealed and each assigned two errors for review. The assignments of error are combined where the issues align.

II.

Father's Assignment of Error Number One

The trial court erred and abused its discretion in terminating [Father's] parental rights by granting permanent custody of [the children] to Lorain County Children Services when the trial court's judgment was against the manifest weight of the evidence.

Mother's Assignment of Error Number One

The Judgment Entry filed in this matter is against the manifest weight of the evidence to award permanent custody of the child to the State of Ohio.

**First Prong of the Permanent Custody Test**

{¶7}     Father claims that the trial court erred in finding that the first prong of the permanent custody test was satisfied by R.C. 2151.414(B)(1)(d), the 12-of-22 provision, because the children had been in the temporary custody of the agency only two months since the attempted reunification with Mother and before the motion for permanent custody was filed. The record demonstrates that Mother was awarded the temporary custody of her children along with an additional order of protective supervision in the agency in the fall of 2010. She retained that status for less than two months. The children were removed when there was a domestic violence incident between the parents and in the presence of the children. Father nevertheless asserts that the return to Mother's care meant that the trial court found all of the parents' problems had been resolved and the measuring of 12-of-22 months should begin anew from that point.

{¶8}     Before a juvenile court may terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test that: (1) the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶9}     Father's argument is without merit for several reasons. First, Father has not cited any authority that supports his position that a brief – and failed – reunification effort re-starts the 12-of-22 time period. He cites only *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, which established that children must be in the temporary custody of an agency for 12 months before an

agency may file a motion for permanent custody on R.C. 2151.414(B)(1)(d) grounds, and that the time that passes after the motion for permanent custody is filed may not be included. *In re C.W.* does not, however, require that the counting of temporary custody time must begin anew after a brief reunification effort in the midst of an on-going case.

{¶10} Second, R.C. 2151.414(B)(1)(d) anticipates that the applicable period of 12 months of temporary custody may accrue in portions. The statute calls for the accumulation of 12 months of temporary custody over the span of the 22 months directly prior to the filing of the motion for permanent custody. *See In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, at syllabus; R.C. 2151.414(B)(1)(d). There is nothing that prohibits a court from looking back to the period of time that passed prior to the date the children were temporarily returned to a parent's care. *In the Matter of M.K.*, 12th Dist. No. CA2011-07-003, 2012-Ohio-36, ¶ 63, citing *In re S.R.*, 10th Dist. Nos. 05AP-1356, 05AP-1366, 05AP-1367, 05AP-1373, 2006-Ohio-4983, ¶ 23. *Compare In re N.G.*, 9th Dist. No. 12CA010143, 2012-Ohio-2825, ¶ 10, citing *In re R.H.*, 9th Dist. No. 24537, 2009-Ohio-1868, ¶ 3, (agency may file a new complaint after a permanent disposition of legal custody).

{¶11} Third, the statutory scheme set forth in R.C. Chapter 2151 provides that a juvenile court may modify a dispositional order of temporary custody "at any time" and the court may proceed as in the original dispositional hearing. R.C. 2151.353(E)(2). Such modifications are generally guided by the best interest of the child. *See, e.g.,* R.C. 2151.415(F); R.C. 2151.417(B). The added restriction of protective supervision entitles the court to still more control regarding parental involvement. *See* R.C. 2151.353(C). The trial court was entitled to modify the disposition upon a determination of the best interests of the children and within the strictures of the ongoing case.

{¶12} Fourth, there is no reasonable basis on which to conclude that placement of the children with Mother in the fall of 2011 meant the trial court had concluded that the parents' problems had been entirely resolved and that the agency was obligated to initiate a new case at that point. Generally, such an order implies only that a parent has made some progress and is being given an opportunity to attempt to regain full custody of the children. In this case, the magistrate congratulated the parents on doing a great job on their case plan, but also emphasized that "the agency is continuing to hold protective supervision" because "there is more to do on the case plan." Mother did not have full legal custody of the children and the trial court did not grant any type of custody to Father.

{¶13} Therefore, the trial court was not barred, as Father contends, from considering the time prior to the two-month reunification effort towards the application of R.C. 2151.414(B)(1)(d). Beyond this, "[i]t is not the obligation of this Court to construct an argument for an appellant." *In re C.R.*, 9th Dist. Nos. 25211, 25223, and 25225, 2010-Ohio-2737, ¶ 43. "Indeed, it is improper for an appellate court to construct legal arguments to support a party's position." *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.*, 192 Ohio App.3d 676, 2011-Ohio-909, ¶ 8. Father's argument is overruled.

{¶14} For her part, Mother concedes satisfaction of R.C. 2151.414(B)(1)(d). Given this concession, Mother's cursory claim that her children could be reunited with her within a reasonable time is irrelevant. *See* R.C. 2151.414(B)(1)(a)-(d). So, too, is Mother's argument that the agency filed its motion for permanent custody "prematurely" with five months remaining until the "sunset" date. Accordingly, these arguments are overruled as moot.

**Reasonable efforts**

{¶15} Father contends that the trial court erred, under R.C. 2151.419, in granting permanent custody of the children to the agency because LCCS had failed to use reasonable efforts to reunify the family. Mother makes a similar assertion. Both arguments are without merit.

{¶16} R.C. 2151.419 requires a trial court to determine that the children services agency made reasonable efforts to prevent removal, to eliminate the continued removal, or to make it possible for the children to return home, but it does not require the court to make such a determination at the time it grants permanent custody to the agency unless reasonable efforts had not been established earlier in the proceeding. *See In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 41-43; *In re K.H.*, 9th Dist. No. 22765, 2005-Ohio-6323, ¶ 9-10. Neither Father nor Mother has argued that the agency failed to make the necessary reasonable efforts determinations in any of the earlier hearings. Consequently, neither Father nor Mother has demonstrated that the trial court erred in failing to make a finding of reasonable efforts at the time it granted permanent custody of the children to the agency. Father's argument is overruled. Mother's argument is overruled.

**Case Plan**

{¶17} Father claims that his case plan did not demonstrate reasonable efforts to prevent the removal of the children or to remedy the continued removal of the children from the home. Father's case plan focused on domestic violence, substance abuse, mental health, counseling and anger management, and the agency offered services to Father in those areas. After Father completed several portions of his case plan, he nevertheless engaged in physical violence against Mother in the presence of his children. The fact that a parent does not successfully resolve all of the problems that caused children to initially be removed from the home does not inevitably

mean that the agency failed to make reasonable efforts to safely reunite a family. An agency may make reasonable efforts to prevent the removal or continued removal of children from a home and yet the parents may not be able to be successful in achieving reunification with their children.

{¶18} More significantly, however, Father did not object to the substance of his case plan or to the agency's efforts towards implementation of the case plan at any point during the course of the proceedings. Consequently, Father has failed to preserve any error in this regard. Father's argument is overruled.

{¶19} For her part, Mother argues that the agency failed to demonstrate that she was not in substantial compliance with her case plan. This Court has repeatedly emphasized that substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. *See, e.g., In re Watkins v. Harris*, 9th Dist. No. 17068, 1995 WL 513118 (Aug. 30, 1995). Moreover, while evidence of case plan compliance is usually relevant to the trial court's best interest determination, it is not dispositive of it. *See, e.g., In re A.A.*, 9th Dist. No. 22196, 2004-Ohio-5955, ¶ 9; *In re Atkins*, 9th Dist. No. 19037, 1998 WL 801893, *6 (Nov. 18, 1998). Rather, the termination of parental rights is governed by R.C. 2151.414 and the proper focus of an evidentiary challenge is on the specific factors listed in that statute. Mother's argument is overruled.

**Second Prong of the Permanent Custody Test**

{¶20} The trial court found that the first prong of the permanent custody test had been satisfied because the children had been in the temporary custody of LCCS for more than 12 months at the time the agency filed its permanent custody motion. As discussed above, Father unsuccessfully disputed the finding, and Mother has conceded it. Therefore, we turn next to the

question of whether a grant of permanent custody is in the children's best interests, a matter challenged by both parents.

**{¶21}** When determining whether a grant of permanent custody is in a child's best interest, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, and the child's need for permanence in his life. *See In re R.G.*, 9th Dist. Nos. 24834 & 24850, 2009-Ohio-6284, ¶ 11. "Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors." *In re Smith*, 9th Dist. No. 20711, 2002 WL 5178, *2 (Jan. 2, 2002). *See also In re Palladino*, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.

**{¶22}** The parents argue that the trial court finding that permanent custody is in the best interests of the children is against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a permanent custody case, this Court reviews the entire record and

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the [judgment].

*State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983). Accordingly, before reversing a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice. *See In re M.C.*, 9th Dist. No. 24797, 2009-Ohio-5544, ¶ 8 and ¶ 17.

{¶23} The parents contend that they had a strong and loving relationship with the children. The caseworker confirmed that the children shared a bond with both parents and that the parents interacted appropriately and lovingly with their children during visits. However, the record also establishes that, after Father's release from prison in February 2011, his visits became much less frequent. Father was incarcerated on a parole violation at the beginning of this case and was arrested for domestic violence against Mother at the end of it. Prior to this case, Father had six drug-related convictions as well as two convictions for child endangering and one conviction for domestic violence. There is minimal evidence regarding the children's continuing and positive relationship with extended family members.

{¶24} Father made good progress on his case plan while incarcerated at the Lorain/Medina Community Based Correctional Facility. The program director of that institution testified that, based on Father's class performance, his prognosis for success was very positive. At the same time, the program director stated that he could not be certain that Father would not revert to some of his earlier behaviors. In April 2010, Father testified at an interim hearing that his coursework changed him and he had come to value his freedom and his family. He stated that he believed drugs were a trigger to his violence. He spoke about maintaining sobriety and following his anger control plan. Six months later, the children were reunited with the parents. Nevertheless, two months after that, Father was involved in domestic violence with Mother once again and the children were again removed from the home.

{¶25} For her part, Mother was not able to consistently provide a safe and stable home for her children. She was slow to get started on her case plan. She faced eviction twice. There is no evidence that she was ever consistently employed or able to support her children. Although she interacted well with her children and no doubt loved them, she was not able to provide a

stable home for them. Despite Father's history, Mother continued her relationship with him for over 13 years. The caseworker testified that Mother had made four police reports for domestic violence in the six years prior to this case, and yet she did not prosecute any of them. In an early report from the guardian ad litem, Mother was said to have left the children alone in order to go to the jail to see Father. The case opened with Mother seeking help from LCCS because she and Father were unable to provide for their children. After the failed reunification effort, Mother again admitted that she was unable to provide for the children and asked the caseworker to return them to their foster families. For the last seven months of this proceeding, Mother did not personally visit her children, but kept in touch with them by telephone. According to the caseworker, Mother said she did not plan on returning to Father, but the caseworker stated that she had been told that before by Mother. Mother testified on her own behalf that she would never be with Father again, but believed that if she could not have custody of the children, Father would be a good parent to them. The caseworker testified that, based on the parents' history of domestic violence and their pattern of reuniting, he was concerned that Mother would get back together with Father or with someone else that would place her and the children at similar risk. The guardian ad litem believed that Mother has largely been controlled by Father and has not accepted responsibility for her own actions. According to the guardian ad litem, the parents have not been able to put the interests of their children ahead of their own.

{¶26} At the time of their removal, all four children exhibited some concerning behaviors and began working with therapists. All four children suffered from nightmares. Three were diagnosed with post-traumatic stress disorder and the youngest had an adjustment disorder. Mi.Z. had a fear of being left alone and suffered from anxiety. Ma.Z. exhibited fearfulness and aggressive behaviors. The twins each had sleep problems, had aggressive behaviors, and

exhibited some hoarding behaviors. One of the twins, S.Z., suffered from frequent temper tantrums, and the other, I.Z., had stress-induced seizures. Although Father was never said to have physically harmed his children, all four children were present during Father's domestic violence incident with Mother in December 2010. The guardian ad litem expressed concern for the safety of the children if they were returned to the parents. The children have all made progress while in foster care. Their foster homes have provided the structure and nurturing that they reportedly need.

{¶27} The second best interest factor requires the trial court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem[.]" R.C. 2151.414(D)(1)(b). Although the trial court has the discretion to decide whether this evidence will be presented through the child's own testimony or that of the guardian ad litem, the statute explicitly requires the trial court to consider the child's wishes as part of its best interest determination. *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 55-56.

{¶28} Father asserts that the trial court committed reversible error by making the best interest determination without having any evidence about the children's wishes. A review of the record reveals that the guardian ad litem was unchallenged in reporting that the children were too young to express their wishes. At the same time, she indicated that Mi.Z., the oldest child, told her that Father hit Mother and the siblings, that he was afraid for his family, and that he felt a need to protect his younger siblings. Mi.Z. also told the guardian that he believed Father would be in jail longer if he told her certain things. In addition, the record reflects that Ma.Z., the youngest child, told her teacher that Father hit Mother and that that was "not nice." The caseworker testified that both Mi.Z. and Ma.Z. told him that they felt safe in their foster home. Upon this record, the guardian ad litem recommended an order of permanent custody. This

evidence is to be weighed by the trial court in conjunction with the evidence on the other best interest factors, with no one factor being given greater weight or heightened importance. *In re N.G.*, 9th Dist. No. 12CA010143, 2012-Ohio-2825, ¶ 27 (finding failure to ascertain child's wishes will not constitute reversible error if there is substantial evidence on remaining best interest factors). Father's argument is overruled.

{¶29} The custodial history of the children reveals that they lived with either Mother or Father prior to the initiation of this case. That means that the oldest child resided in the home for five years, the twins for two and one-half years, and the youngest child for 15 months. The children have been out of the home for extensive periods of time since the initial removal. During the two years in which this case has been pending, the children resided with their parents for only two months. Otherwise, they have resided with relatives or foster families. The three youngest children lived outside of the family home nearly as long as or longer than they lived in it.

{¶30} The caseworker testified that the children had been in foster care a long time and needed permanency in their lives. He did not believe that either parent could provide a legally secure permanent placement. Mother was unable or unwilling to protect her children from continued violence. Father was not able to control his violent behavior even after attending a domestic violence class. The children observed violence between their parents in their home. They suffer from numerous health and behavioral problems. The family faced eviction twice. Relatives who were once willing to assist with the children are no longer willing or able to do so; there are no other relatives who can provide a home for them. The children have made progress while living with their foster families, and those families are willing to adopt them if permanent custody is granted. The two foster families have independently arranged joint visits so that the

children can maintain their relationships, and the foster mothers testified that they would continue to facilitate contact between the children.

{¶31} The record does not reflect that the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgement must be reversed and a new trial ordered. Father's assignment of error is overruled. Mother's assignment of error is overruled.

<u>Father's Assignment of Error Number Two</u>

> The trial court erred to [Father's] prejudice for failing to appoint an attorney to represent the children in this case, and for failing to hold a hearing to investigate the need for independent counsel.

{¶32} Father argues that the trial court erred in failing to appoint an attorney to represent the children in this case or to conduct an investigation into whether the minor children were entitled to independent counsel in the permanent custody hearing. Father concedes that he did not raise this issue at any point in the trial court and that he has raised it for the first time on appeal. This Court has repeatedly stated "where no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal." *In re T.E.*, 9th Dist. No. 22835, 2006-Ohio-254, ¶ 6, quoting *In re K.H.*, 9th Dist No. 22765, 2005-Ohio-6323, ¶ 41, citing *In re B.B.*, 9th Dist. No. 21447, 2003-Ohio-3314, ¶ 7. Other appellate districts have similarly held that the issue must be preserved for appellate review by bringing the issue to the attention of the trial court. *E.g., In re Graham*, 4th Dist. No. 01CA57, 2002-Ohio-4411, ¶ 31-33; *In re Brittany T.*, 6th Dist. No. L-01-1369, 2001 WL 1636402, *6 (Dec. 21, 2001).

{¶33} Father claims that waiver does not always apply in such cases and cites *In re Emery*, 4th Dist. No. 02CA40, 2003-Ohio-2206, ¶ 17, in support of his position. That case fails to support Father's position, however, as the mother in *Emery* did, in fact, preserve the issue by

bringing it to the attention of the trial court. *Id.* at ¶ 12. The appellate court specifically found that the mother did not waive the issue of her children's right to counsel. *Id.* at ¶ 20.

**{¶34}** Father also claims that the trial court committed plain error by failing to appoint counsel for the children. This Court has previously explained that a parent who is appealing the termination of his own parental rights has standing to raise the issue of his children's right to counsel only insofar as it impacts his own parental rights. *In re T.E.*, 2006-Ohio-254, ¶ 8. In this case, Father has not demonstrated that the children's lack of counsel affected the outcome of the case in any way. Consequently, Father's argument is overruled.

Mother's Assignment of Error Number Two

> The trial court erred to [Mother's] prejudice for considering the guardian ad litem's testimony and report after the guardian admitted to complying [sic] with Sup. R. 48.

**{¶35}** Mother claims that the guardian ad litem failed to comply with the responsibilities of a guardian ad litem as set forth in Sup.R. 48 and, therefore, her testimony was given undue weight by the trial court. The guardian ad litem filed reports with the trial court, and her testimony was subject to cross-examination by all parties. The trial judge, as trier of fact, was entitled to believe or disbelieve the guardian's testimony and to consider it in the context of all the evidence before the court. Mother has failed to point to any portion of the judgment entry that demonstrates that the trial judge erroneously relied on the testimony or the report of the guardian ad litem. Nor does she point to any particular finding that is unreasonable or otherwise unsupported by the evidence because of improper reliance on the testimony of the guardian ad litem. Mother has not, therefore, established prejudice. Any error in this regard is harmless, and the assignment of error is overruled.

III.

**{¶36}** Mother's two assignments of error are overruled. Father's two assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

THOMAS MCGUIRE, Attorney at Law, for Appellant.

ROBERT CABRERA, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.