[Cite as *In re Mn S.(F)*, 2013-Ohio-3086.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


IN THE MATTER OF:                          :

Mn. S.(F)                                  :        CASE NO.   CA2013-02-004

                                           :        O P I N I O N
                                                    7/15/2013
                                           :

                                           :


APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 21020007


Stephen J. Pronai, Madison County Prosecuting Attorney, Rachel M. Price, 59 North Main Street, London, Ohio 43140, for appellee, Madison County Children Services

Adkins & Arrington Law, Nicholas A. Adkins, 67 East High Street, London, Ohio 43140, for appellant, Alice S.

Shannon M. Treynor, 63 North Main Street, P.O. Box 735, London, Ohio 43140, for Brian S.

Jennifer J. Hitt, 63 North Main Street, Suite B., London, Ohio 43140, guardian ad litem


        **PIPER, J.**

        {¶ 1}   Appellant, the biological mother of Mn. S.(F), appeals a decision of the Madison

County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to

a children services agency.

        {¶ 2}   This case began in February 2010, when a complaint alleging Mn. was an

unruly child was filed in the juvenile division of the Madison County Court of Common Pleas. The complaint alleged that Mn., who at the time was 10 years old, was unruly because she was habitually truant from school. A paternal aunt filed for temporary custody of Mn. and her two older sisters in August 2010. The aunt requested custody on the basis that Mn. had been living with her for several weeks while the child's mother was seeking treatment for a drug addiction. The aunt also alleged that the child needed a stable environment with supervision due to various problems within the home.

{¶ 3} Emergency temporary custody was granted to the aunt, and after a hearing, the court continued the aunt's temporary custody. The court found that the mother was addicted to opiates and was in the initial stages of treatment. The court further found that according to a psychological evaluation, the mother had previously sought treatment for her dependence and had relapsed five times.

{¶ 4} Mn. remained in her aunt's home until June 22, 2011, when she and her oldest sister was placed in the temporary custody of children services because her aunt was no longer able to care for them.[1] A case plan was prepared for the parents to work towards reunification with the children. Reunification was unsuccessful and on October 15, 2012, the agency filed for permanent custody of Mn. A hearing was held on February 12, 2013, and the court issued a decision granting permanent custody to the agency on February 20, 2013.

{¶ 5} The mother now appeals the juvenile court's decision to grant permanent custody of Mn. to the agency and raises one assignment of error for our review. In her sole assignment of error, appellant argues that the court's decision was against the manifest weight of the evidence.

---

1. The two older sisters are not involved in the court's decision to grant permanent custody of Mn. to the agency. The oldest child turned 18 while in agency custody, and the middle child remained at her aunt's home for a period of time after Mn. was placed in the temporary custody of the agency.

{¶ 6} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 7} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 8} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that Mn. was in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody

motion.[2]    However, appellant does dispute the juvenile court's finding that granting permanent custody of Mn. to the agency is in the child's best interest, and argues this finding is against the manifest weight of the evidence.

{¶ 9}    R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 10}  As mentioned above, appellant challenges the manifest weight of the evidence supporting the court's determination that it was in the best interest of Mn. to grant permanent custody to the agency.  Before reversing a judgment as being against the manifest weight of the evidence in this context, this court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a

---

2.  The court also determined that the child could not be placed with either of her parents within a reasonable time and should not be placed with her parents.  However, as the court determined the child had been in agency custody for 12 of 22 months, this finding was not required.  *In re J.M.*, 12th Dist. No. CA2012-05-015, 2012-Ohio-4766, ¶ 28.

- 4 -

manifest miscarriage of justice. *In re M.Z.*, 9th Dist. No. 11CA010104, 2012-Ohio-3194, ¶ 22.

{¶ 11} At the hearing, the agency caseworker testified that she began working with the family in March 2011 and a case plan was prepared to address the problems involved in the case. Because the parents had a history of being unable to maintain jobs or housing and were unable to maintain utilities, the case plan required the parents to maintain stable employment and housing. The case plan also contained a mental health component which required the parents to complete an assessment and follow the recommended treatment. In addition, the parents were required to complete parenting classes to address the parents' history of neglect and problems with the children's truancy.

{¶ 12} The caseworker testified that the parents failed to complete the requirements of the case plan. The mother started working on the mental health component of the case plan twice, but has not finished drug abuse treatment. The father was resistant to counseling, and at the time of the hearing, had not begun to address the mental health requirements of the case plan, although he testified that he had an appointment to begin counseling in March 2013.

{¶ 13} During the pendency of the case, the parents lived several places and were unable to maintain a residence for any period of time. At the time of the hearing, the parents had separated and the mother was living with two elderly and ill uncles, while the father was living with his mother in a home that was in foreclosure. The caseworker indicated that neither residence was an appropriate home for the child.

{¶ 14} The caseworker testified that the parents completed the required parenting classes. However, the parents were unable to implement most of the knowledge gained through the classes. The parenting instructor testified at the hearing that she worked with the parents on areas of food, security, a clean environment and trust issues. According to the

parenting instructor, given the history of drug abuse and neglect, it was important for the children to know they could trust and rely on their parents to care for them. She stated that the parents completed the classes and had the knowledge, but failed to apply it. She further explained that the parents knew what to do, but did not follow through when observed. Based on her observations, she stated that there were more instances where the parents failed to do what was needed for the children, than there were instances where the parents did what was needed. The caseworker similarly testified that the parents continue to have problems showing the children that they are the parents, that they are in control and that they are going to make the children a priority.

{¶ 15} The caseworker testified that during the spring of 2012, the parents were having "peaks and valleys" in their progress, but because the agency was seeing some measure of progress, visits were moved from the agency back to the parents' home. However, several events occurred in the time period from July to September 2012, that changed the course of the plan for reunification.

{¶ 16} The caseworker testified that in June 2012, the mother called her and alleged domestic violence by the father. The caseworker picked up the mother, put her in a motel, then a shelter and was in the process of obtaining housing, when the mother returned to the father. In addition, both parents had positive drug tests and the mother was discharged from the local mental health program for noncompliance. In addition, in late August 2012, Mn. reported to her foster mother that her father had been raping her. The foster mother reported the abuse and the agency substantiated the sexual abuse. The child reported that her mother was present when the sexual abuse occurred. There have been no visits between Mn. and her parents since the first week of July 2012.

{¶ 17} In addition, Mn. began stating that she did not want to visit her parents and did not want to return home. A counselor who has been seeing Mn. since September 2011

indicated that she sees the child weekly. She explained that the child's behavior had improved and the child was beginning to become stable when the allegations of sexual abuse surfaced and the child regressed. The counselor indicated that Mn. is very adamant that she does not want to have contact with her parents. The counselor recommended no contact with the father until he undergoes and completes sex offender treatment and then a slow, gradual reunification only if Mn. wanted contact.

{¶ 18} The counselor testified that Mn. described her mother's history of drug abuse and its effects and the child says she does not want to live that way again. The counselor indicated that if Mn. decided she wanted to have contact with the mother, she would recommend contact begin in a therapeutic setting with family counseling, before the two ever try meetings on their own. The counselor testified that Mn. has made progress and has shown a big improvement recently by making the honor roll at school, in contrast to the past where she has not done well academically.

{¶ 19} The foster mother testified that Mn. has been in her home about 19 months and has shown improvement. The foster mother stated that when Mn. first came into the home, she liked to bully people and to pick fights, was hateful and grouchy, had trouble at school and had trouble on the bus and getting along with other kids. She indicated that Mn. now goes to school without problem, does her homework and chores and is doing much better. The foster mother also reported that Mn. does not want to visit with her parents.

{¶ 20} Appellant argues on appeal that she has worked to meet the agency's requirements and has substantially complied with the case plan. She argues that she completed parenting classes, is taking college classes and receives financial aid to support the family while she is in school. She also argues she has completed recent drug tests that were negative, and did most of the drug abuse program. Appellant contends that her daughter's desire not to visit is based on past experiences and she has changed. Appellant

further argues that although Mn. stated that her mother was aware of the sexual abuse, a voice stress test appellant completed shows she did not know about the abuse.

{¶ 21} After careful review, we find the trial court's decision is not against the manifest weight of the evidence. The evidence shows that Mn. has not lived with her parents since August 2010 and has not visited her parents since July 2012. While appellant presented evidence that a voice stress test indicates she was not aware of the abuse, several witnesses testified that Mn. does not want to visit her mother and does not want to have a relationship with her. The evidence shows the child is in need of stability and there was testimony that Mn. has been upset the case was taking so long. No relative placements are available.

{¶ 22} Although appellant is now attending college, she has not evidenced any stability in employment or housing throughout the pendency of the case. Appellant has not completed drug abuse treatment, despite starting the program two times during the case. The caseworker testified there is additional concern because appellant is taking prescribed medication from the same family of drugs that she has been addicted to for years. Although appellant completed parenting classes, she was unable to implement the lessons. Finally, the guardian ad litem assigned to the case prepared a report and recommended that permanent custody be granted to the agency. Accordingly, we find the trial court's determination that granting permanent custody of Mn. to the agency was in the child's best interest was not against the manifest weight of the evidence.

{¶ 23} The assignment of error is overruled.

{¶ 24} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.