[Cite as *In re N.G.*, 2012-Ohio-2825.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: N.G.

C.A. No.    12CA010143

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    06JC12646

DECISION AND JOURNAL ENTRY

Dated: June 25, 2012

MOORE, Judge.

**{¶1}** Appellant, Jennifer Burchell ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Lorain County Children Services ("LCCS"). This Court affirms.

I.

**{¶2}** Mother is the natural mother of N.G., born January 3, 2004. N.G.'s father is not a party to this appeal. This case began on March 10, 2006, when LCCS filed a complaint, alleging that N.G., then only 18 months old, was a neglected and dependent child. The allegations of LCCS focused on Mother's admitted problem with substance abuse, which had included using drugs during her pregnancy with a younger child, whom she had placed for adoption after the child's birth. LCCS was also concerned about Mother's mental health and that she had been the victim of domestic violence during her on and off relationship with her ex-

husband, who also had a long history of drug addiction. By stipulation of the parties, N.G. was adjudicated a neglected and dependent child on May 20, 2006.

{¶3} N.G. was initially allowed to remain in Mother's home, under an order of protective supervision by LCCS. During June 2006, however, Mother had knee surgery due to an injury she sustained in an automobile collision, which required extensive rehabilitation. Because Mother was unable to provide care for N.G., the trial court first placed the child in the temporary custody of relatives and later in the temporary custody of LCCS.

{¶4} During the following year and a half, Mother worked on recovering from her knee injury and managing the resulting pain while at the same time ending her addiction to drugs. By the end of 2007, she had apparently ended her relationship with her ex-husband and achieved ongoing sobriety. On January 17, 2008, pursuant to a motion filed by LCCS, the trial court returned N.G. to Mother's custody, under an order of protective supervision. Following a hearing on the change of disposition, the trial court concluded that Mother had completed drug and alcohol treatment and that her addiction was in full remission. On June 28, 2008, protective supervision was terminated and N.G. was placed in Mother's legal custody.

{¶5} There was no further activity in this case until February 1, 2010, when LCCS filed a motion "for further dispositional orders," seeking temporary custody of N.G. Mother was living with her ex-husband and was again using drugs and involved in a violent relationship. Mother agreed to enter a detoxification program and stipulated that N.G. should be placed in the temporary custody of LCCS.

{¶6} According to the expert who performed Mother's most recent substance abuse evaluation, Mother had a long history of addiction to both opiates and benzodiazepines. Her addiction was medically complicated because she also suffered from epilepsy, mental health

issues, and chronic pain due to her knee injury. Nevertheless, Mother had been able to conquer these problems in the past and achieve a sustained period of sobriety that had enabled her to be reunified with N.G. in 2008. LCCS developed a case plan that again had reunification as its goal, with its primary focus on Mother achieving and maintaining sobriety.

{¶7} During the 19 months that followed, however, Mother did not achieve ongoing sobriety for any period of time. She entered two different drug treatment programs and, although she completed the detoxification portion of each program, she did not follow up with the necessary aftercare to maintain her sobriety. Consequently, she continued abusing cocaine, heroin, and other drugs throughout that period. Mother also continued living with her ex-husband. One month before the permanent custody hearing, Mother was involved in a domestic dispute with her him after he returned home to find her using intravenous drugs with a strange man. When the police responded to the scene, Mother was charged with possession of cocaine and possession of drug paraphernalia.

{¶8} On December 1, 2011, following a permanent custody hearing, the trial court found that N.G. had been in the temporary custody of LCCS for more than 12 of the prior 22 months, that she could not be returned to Mother's custody within a reasonable time or should not be returned to her, and that permanent custody was in the child's best interest. Consequently, it terminated Mother's parental rights and placed N.G. in the permanent custody of LCCS. Mother appeals and raises three assignments of error.

I.

{¶9} Before reaching Mother's assignments of error, this Court must draw attention to a procedural error that was not raised by Mother. Although not dispositive of this appeal, we feel compelled to comment about the manner in which this case was reopened in 2010 because

the trial court and the parties were apparently under the mistaken understanding that this procedure complied with Ohio law.

{¶10} The trial court's authority in dependency and neglect cases is strictly governed by a comprehensive statutory scheme set forth in R.C. Chapter 2151. *E.g.*, *In re I.S.*, 9th Dist. No. 24763, 2009-Ohio-6432, ¶ 10. On February 1, 2010, when LCCS sought removal of N.G. from Mother's home, it did not file a new dependency and neglect complaint under R.C. 2151.27(A)(1), alleging that the child was neglected and dependent, which would have authorized the juvenile court under R.C. 2151.23 and 2151.31 to remove the child from the home. *Compare In re R.H.*, 9th Dist. No. 24537, 2009-Ohio-1868, ¶ 3 (child who had been placed in father's legal custody at the conclusion of a prior juvenile case was removed from his custody after the agency filed a new complaint).

{¶11} Rather than commencing a new dependency and neglect case, LCCS filed a motion in the existing 2006 case "for further dispositional orders," seeking to terminate the 2008 legal custody order and have N.G. placed in its temporary custody. N.G. had been living with Mother for over two years and had been in her full legal custody for over 19 months, but the trial court and all parties proceeded as if LCCS were seeking modification of a temporary disposition in an ongoing dependency and neglect case under R.C. 2151.353(A)(2) and R.C. 2151.42(A), which merely required a demonstration that such a disposition was in the child's best interest.

{¶12} Although the trial court retained jurisdiction over N.G. after it adjudicated her a dependent and neglected child and LCCS was authorized to seek a modification or termination of the trial court's prior dispositional order "at any time[,]" it was also necessary that any modification of the prior dispositional order comply with R.C. 2151.42 "[i]f applicable." R.C. 2151.353(E)(1) and (2). Although R.C. 2151.42(A) authorizes the trial court to modify many

dispositional orders if it finds that such a modification is in the child's best interest, R.C. 2151.42(B) sets forth an additional constraint on the trial court's authority to modify or terminate orders "granting legal custody of a child to a person[.]"

{¶13} R.C. 2151.42(B) explicitly emphasizes that an order granting legal custody is "intended to be permanent in nature." Consequently, it provides that the trial court "shall not" modify or terminate a legal custody order unless it first finds, based on facts that have arisen since the prior order or were unknown to the court at that time, "that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child." R.C. 2151.42(B).

{¶14} Although the trial court failed to make the requisite findings that there had been a change in circumstances in this case or that termination of legal custody was "necessary" to serve the best interest of N.G., Mother was represented by counsel when she affirmatively waived this requirement by stipulating that N.G. should be removed from her home and placed in the temporary custody of LCCS. Waiver is the "intentional relinquishment or abandonment of a right" that cannot form the basis of error on appeal. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. Moreover, given the substantial evidence in the record that Mother was unable to care for her child because she could not control her addiction to drugs by achieving even short-term sobriety, we could not conclude that the outcome of this case would have been any different had the trial court followed the appropriate procedure in reopening this case.

{¶15} Next, we turn to the assignments of error that Mother has raised on appeal.

ASSIGNMENT OF ERROR I

THE FAILURE TO APPOINT COUNSEL FOR THE MINOR CHILD WAS PLAIN ERROR AND CONSTITUTED A VIOLATION NOT ONLY OF THE CHILD'S DUE PROCESS RIGHTS BUT ALSO OF MOTHER'S.

**{¶16}** Mother's first assignment of error is that the trial court erred in failing to appoint counsel for the minor child, N.G. Mother concedes that none of the parties raised this issue at any time in the trial court and that she raises it for the first time in her appeal to this Court. As this Court has repeatedly stated, "'where no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal.'" *In re T.E.*, 9th Dist. No. 22835, 2006-Ohio-254, ¶ 6, quoting *In re K.H.,* 9th Dist. No. 22765, 2005-Ohio-6323, ¶ 41, citing *In re B.B.*, 9th Dist. No. 21447, 2003-Ohio-3314, ¶ 7. Other appellate districts have also held that this issue must be raised in the trial court to preserve it for appellate review. *E.g.*, *In re Graham*, 4th Dist. No. 01CA57, 2002-Ohio-4411, ¶ 31-33; *In re Brittany T.*, 6th Dist. No. L-01-1369, 2001 WL 1636402, *6 (Dec. 21, 2001).

**{¶17}** In *In re T.E.*, this Court explained its rationale for not addressing the trial court's failure to appoint counsel for the child when a parent raised the issue for the first time on appeal:

> Although some courts have held that a parent cannot waive the issue of the children's right to counsel because such a result would unfairly deny the children their right to due process, *e.g.*, *In re Moore*, 158 Ohio App.3d 679, 2004-Ohio-4544, ¶ 31, we disagree that the reasoning applies to this case. Mother has not appealed on behalf of her children and is not asserting their rights on appeal. This is Mother's appeal of the termination of her own parental rights and she has standing to raise the issue of her children's right to counsel only insofar as it impacts her own parental rights. *In re Smith*, 77 Ohio App.3d 1, 13 (1991).
>
> The Ohio General Assembly and the Ohio Supreme Court have required courts to expedite cases involving the termination of parental rights, to prevent children from lingering in foster care for a number of years. *E.g.*, R.C. Chapter 2151; App.R. 11.2. Mother should not be permitted to impose an additional delay in the proceedings by raising a belated challenge for the first time on appeal, under the auspices of defending her children's due process rights. She had the opportunity at the permanent custody hearing to timely assert their rights, and therefore her derivative rights, but she chose not to. This Court is not inclined to reward a parent for sitting idly on her rights by addressing an alleged error that should have been raised, and potentially rectified, in the trial court in a much more timely fashion.

*In re T.E.*, at ¶ 8-9.

{¶18} Although Mother has argued that the trial court committed plain error by failing to appoint counsel for N.G., she has failed to demonstrate that the child's lack of counsel affected the outcome of this case in any way. Despite Mother's argument to the contrary, we will not speculate that there may have been a conflict between the wishes of the child and the recommendation of guardian ad litem absent an affirmative demonstration of such a conflict on the record. *See In re D.H.*, 177 Ohio App.3d 246, 2008-Ohio-3686 ¶ 42 (8th Dist.).

{¶19} Consequently, Mother has failed to demonstrate that the trial court committed plain error by failing to appoint counsel for N.G. Mother's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY NOT EVALUATING [N.G.'S] WISHES WHEN DETERMINING THE BEST INTERESTS OF THE CHILD.

ASSIGNMENT OF ERROR III

THE TRIAL COURT'S JUDGMENT THAT THE TERMINATION OF PARENTAL RIGHTS OF MOTHER WAS IN [N.G.'S] BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} Mother's second and third assignments of error will be discussed together, as both pertain to the trial court's finding that permanent custody was in N.G.'s best interest. Mother asserts that the trial court committed reversible error by making its best interest determination without any evidence of the child's wishes and, further, that its best interest finding was not supported by the evidence that was presented at the hearing.

{¶21} Before a juvenile court may terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test that: (1) the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either

parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶22}  The trial court found that the first prong of the permanent custody test had been satisfied because N.G. had been in the temporary custody of LCCS for more than 12 months at the time the agency filed its permanent custody motion, and because she could not be returned to Mother's home within a reasonable time or should not be returned to her because of several factors under R.C. 2151.414(E), including that Mother had failed to substantially remedy the conditions that caused the child's continued removal from her home and that Mother had a chronic chemical dependency that was so severe that it made Mother unable to provide N.G. with an adequate home at that time or, as anticipated, within the next year.  R.C. 2151.414(E)(1) and (2).  Mother does not dispute any of the trial court's findings on the first prong of the permanent custody test.

{¶23} Mother confines her challenge on appeal to the trial court's finding that permanent custody was in the best interest of N.G.  When determining whether a grant of permanent custody is in a child's best interests, the juvenile court must consider the following factors:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ***;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]

R.C. 2151.414(D)(1)(a)-(d). [1]

{¶24} First, Mother asserts that the trial court committed reversible error by making the best interest determination without having any evidence about the child's wishes. A review of the record supports Mother's assertion that there was no evidence before the trial court concerning the wishes of N.G., who was nearly eight years old at the time of the permanent custody hearing. She did not testify in camera and there is nothing in the testimony or report of the guardian ad litem to indicate what the child's wishes were or even whether the guardian had ascertained them. There was no suggestion on the record that N.G. was too immature or otherwise unable to express her wishes.

{¶25} As quoted above, R.C. 2151.414(D)(1) sets forth the best interest factors that the trial court is required to consider, including "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem[.]" R.C. 2151.414(D)(1)(b). Although the trial court has the discretion to decide whether this evidence will be presented through the child's own testimony or that of the guardian ad litem, the statute explicitly requires the trial court to consider the child's wishes as part of its best interest determination. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 55-56.

{¶26} In addition to the obligation of the agency to present evidence and the trial court to consider the child's wishes under R.C. 2151.414(D)(1)(b), Sup.R. 48(D)(13)(c) explicitly requires the guardian ad litem to ascertain the child's wishes in preparing his or her report to the court about the child's best interest. If the guardian ad litem ascertained the child's wishes in

---

[1] The factor set forth in R.C. 2151.414(D)(1)(e) does not apply to the facts of this case.

this case, he did not convey that information to the court, nor did he explain that N.G., who was almost eight years old at the time of the hearing, was unwilling or unable to express her wishes.

{¶27} Nonetheless, although the trial court was required to consider each of the statutory best interest factors, none of these factors is controlling, nor is any factor given greater weight or heightened importance. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56. Rather, the trial court is required to weigh the totality of evidence on all of the factors to reach a best interest decision. *Id*. at ¶ 63-64. Although this Court has reversed permanent custody decisions due to a lack of evidence of the child's wishes, those cases have also involved an absence of evidence on other best interest factors to support the trial court's permanent custody decision. *See, e.g*., *In re A.W.*, 9th Dist. No. 09CA009631, 2010-Ohio-817, ¶ 12-26.

{¶28} In other words, the trial court's failure to ascertain the child's wishes will not constitute reversible error if there was substantial evidence on the remaining factors to support the trial court's conclusion that permanent custody was in the child's best interest. In this case, a review of the evidence on the remaining best interest factors reveals that any error by the trial court in failing to ascertain N.G.'s wishes was harmless, as there was substantial evidence before the trial court to establish that permanent custody was in her best interest.

{¶29} The first statutory factor to be considered by the court was the interaction and interrelationship between N.G. and Mother. Although the evidence demonstrated that Mother regularly visited with N.G. and that the interaction between them was usually positive, Mother's interaction with N.G. throughout the 19 months preceding the hearing, and for numerous months during N.G.'s prior removal from the home, had been limited to periodic visits that were supervised by LCCS. During the past 19 months, Mother's visits had never progressed beyond supervised visits because she never achieved a period of sobriety. In fact, as the case progressed,

the frequency of Mother's visits with N.G. was decreased from once a week to twice a month because Mother was making so little progress on the case plan. During the periods that N.G. had lived with her mother, she had been subjected to a home environment of drug use and domestic violence, which had led to her removal from the home at the age of less than two and again at the age of six.

{¶30} As explained above, there was no evidence of N.G.'s wishes about where she wanted to reside. Nonetheless, the guardian ad litem, who had been assigned to this case since shortly after its inception in 2006, explained his concerns about Mother's inability to control her long-term substance abuse. He had watched Mother's repeated attempts to conquer her drug addiction over a period of more than six years. The guardian emphasized that Mother had "profound difficulties" with her drug addiction and that, in his opinion, she had "actually taken a step backward" during the previous 19 months. Mother had been able to achieve ongoing sobriety in 2007, which allowed N.G. to be returned to her home in January 2008.

{¶31} Since the removal of N.G. in February 2010, however, Mother had been unable to achieve even short-term sobriety. She detoxed twice during this period, but did not follow through with the required aftercare treatment either time. Although Mother testified that she had recently begun a suboxone program that she was sure would work, she did not begin that program until almost two years after N.G.'s second removal from her home. Moreover, she had yet to demonstrate that she would be successful in achieving sobriety, as she had just recently relapsed while on the program, and she continued living with her ex-husband with whom she had an extensive history of drug addiction and domestic violence.

{¶32} N.G.'s custodial history has involved repeatedly moving in and out of Mother's home. She was first removed from her Mother's custody before she was two years old and spent

most of the next two years living in temporary placements while Mother worked on her case plan goals and temporarily achieved sobriety. N.G. returned to Mother's custody, where she resided for nearly two years, but was removed in early 2010, again due to Mother's drug addiction. N.G. then spent more than 19 months living in another temporary placement.

**{¶33}** N.G., who was almost eight years old at the time of the hearing, had spent almost half of her life outside of Mother's custody. This Court has held that "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." *In re Smith*, 9th Dist. No. 20711, 2002 WL 5178, *5. Unlike the mother in *In re Smith*, who had made great strides working toward the reunification goals of her case plan, Mother made little progress during the previous 19 months toward ending her cycle of addiction to drugs. Although Mother had achieved ongoing sobriety during the 2006-2008 period of removal, at least temporarily, she had made no similar progress during the current 19-month removal period.

**{¶34}** During this same period, N.G. had been living in a stable home with the foster family, was in counseling to work on her behavioral problems, and had made significant progress. She had assimilated into the foster family and the foster mother testified that she would like to adopt N.G. if the agency was granted permanent custody.

**{¶35}** N.G. had moved between caretakers and homes at least every two years throughout her life. She had never had a permanent home and was in need of a legally secure permanent placement. Given Mother's inability to achieve sobriety during the 19 months preceding the hearing, the trial court could reasonably conclude that she would be unable to provide N.G. with a suitable home any time in the foreseeable future. Although LCCS had investigated potential relative placements, it had been unable to find a suitable relative who was

willing and able to provide N.G. with a permanent home. Because the trial court also had evidence before it that the foster parents would like to adopt N.G., it concluded that a legally secure permanent placement could be achieved by granting permanent custody of N.G. to LCCS.

{¶36} Consequently, the trial court reasonably concluded that permanent custody was in the best interest of N.G. As there was substantial evidence to support its best interest finding, any error in the trial court's failure to ascertain N.G.'s wishes was harmless. Mother's second and third assignments of error are overruled.

### III.

{¶37} Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

───────

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
<u>CONCURS.</u>

BELFANCE, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

<u>APPEARANCES:</u>

KATHLEEN M. AMERKHANIAN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and JENNIFER YOUNG, Assistant Prosecuting Attorney, for Appellee.