[Cite as *In re A.S.*, 2025-Ohio-1349.]

STATE OF OHIO        )               IN THE COURT OF APPEALS
                      )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

IN RE: A.S.

C.A. No.     31183

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN-17-09-000754

DECISION AND JOURNAL ENTRY

Dated: April 16, 2025

---

CARR, Judge.

**{¶1}** Appellant, C.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated a prior order of legal custody to both parents and placed her minor child in the legal custody of the child's paternal grandparents ("Grandparents"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of A.S., born December 20, 2012. The child's father ("Father") is now deceased. The trial court proceedings originally involved Mother's three other minor children, but they are not parties to this appeal. Summit County Children Services Board ("CSB") was also involved in the original dependency case, but did not participate in the post-judgment proceedings at issue on appeal.

**{¶3}** CSB filed a complaint to commence this case in September 2017. At that time, Mother and Father were not living together and Father had a limited role in the life of A.S. The

complaint alleged that A.S. was a dependent child because of Mother's lengthy history of substance abuse, including while pregnant with a newborn sibling of A.S., and her inability to provide suitable care for A.S. and her other children. The juvenile court later adjudicated A.S. dependent, placed her in the temporary custody of Grandparents under an order of protective supervision by CSB, and adopted the case plan as an order of the court.

{¶4} The case plan goals for Mother focused primarily on her obtaining and maintaining sobriety. The juvenile court also ordered Mother to complete its Family Reunification through Recovery Court program ("FRRC"). Mother's visits with A.S. remained supervised or monitored while she engaged in substance abuse treatment. Mother actively engaged in the FRRC program and otherwise complied with the requirements of the case plan.

{¶5} CSB had no concerns about drug use or other instability in Father's life. Father's case plan objectives were to develop a closer relationship with A.S. and engage in counseling and a parenting education program. Father complied with the case plan and his visits with A.S. were gradually expanded to unsupervised overnight and weekend visits in his home. Because both parents made substantial progress on the case plan, the trial court granted CSB's request for a first six-month extension of temporary custody to Grandparents.

{¶6} On December 11, 2018, the juvenile court placed A.S. in the temporary custody of Father under an order of protective supervision by CSB. Shortly afterward, Mother graduated from the FRRC program. On March 22, 2019, by agreement of the parties, the juvenile court placed A.S. in the shared legal custody of the parents. The court designated Father as the residential parent for school purposes, with the child residing with him throughout the week. The trial court closed the case, subject to its continuing jurisdiction under R.C. 2151.353(F)(1). CSB's involvement in this case ended at that time.

{¶7} More than two years later, Father filed an emergency motion to modify the 2019 shared parenting plan because he had been diagnosed with "an extremely serious medical condition and [was] no longer able to care for the minor child[.]" Both parents agreed to a modification of the 2019 order. On August 19, 2021, the trial court continued A.S. in the legal custody of both parents, but named Mother as the residential parent for school purposes and granted Father parenting time "as can be agreed and arranged with Mother."

{¶8} Less than three weeks later, Grandmother filed a motion for modification of legal custody under R.C. 2151.42. The motion was originally filed by Grandmother only, although she was married to and living with Grandfather. The trial court later permitted both Grandmother and Grandfather to intervene in this case and join in the motion; and the trial court ultimately placed A.S. in the legal custody of Grandparents. Consequently, this Court will refer to the motion throughout as Grandparents' legal custody motion.

{¶9} Grandparents' motion alleged that Father was terminally ill, that Mother was again using drugs and was residing with a convicted sex offender, and that Grandparents were prepared to provide A.S. with a stable, permanent home. While a hearing on the motion to modify legal custody was pending, Grandmother (prior to Grandfather's involvement on the record) requested temporary custody of A.S. because, although Mother was supposed to be the child's residential parent for school purposes because of Father's declining health, A.S. was again living with Father and he was too sick to care for the child daily. The motion further alleged that Mother was living with a convicted sex offender, who posed an immediate threat to the safety of young A.S. The trial court set the motion for temporary custody for a hearing before a magistrate.

{¶10} Prior to the temporary custody hearing, Mother informed the court that she would not appear for the hearing; and she did not attend in person, remotely, or through counsel. At the

hearing, Grandmother presented evidence that Father was caring for A.S. and driving her to school every day but was too ill to continue doing so. She also presented evidence that Mother had recently married a convicted sex offender, who was living in Mother's public housing apartment in violation of the terms of her lease. Father and the guardian ad litem expressed their agreement that A.S. be placed in the temporary custody of Grandmother. Pursuant to a magistrate's order, the trial court placed A.S. in the temporary custody of Grandmother on November 9, 2023. Mother did not file a motion to set aside that order and does not challenge that order on appeal.

{¶11} A hearing on Grandparents' motion for legal custody of A.S. commenced on December 18, 2023, and concluded on March 22, 2024. Father testified on the first day of the hearing. He explained that he had been the primary caregiver for A.S. for the past few years but that, due to his terminal cancer and declining health, he was no longer able to care for her on a day-to-day basis. He fully supported Grandparents receiving legal custody of his child. Unfortunately, Father passed away the following month.

{¶12} Following the hearing, the magistrate decided that Grandparents should be awarded legal custody because, under R.C. 2151.42(B), there had been a requisite change in the circumstances of the parents and A.S. and legal custody to Grandparents was in the best interest of A.S. Although the magistrate found that Grandparents had failed to prove that Mother was again abusing drugs, he found the requisite change in circumstances based on the recent death of Father and the specific circumstances involving Mother's marriage to a man with an extensive criminal history.

{¶13} Mother filed objections to the magistrate's decision, which were overruled by the trial court. The trial court terminated the 2021 order of shared legal custody to Mother and Father

and placed A.S. in the legal custody of Grandparents.   Mother appeals and raises two assignments of error, which will be addressed together to facilitate discussion.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN MODIFYING [MOTHER'S] LEGAL CUSTODY WITHOUT FIRST FINDING THAT [MOTHER] WAS UNSUITABLE.

### ASSIGNMENT OF ERROR II

IN THE ALTERNATIVE, THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S CHANGE-OF-CIRCUMSTANCES FINDING.

**{¶14}** Mother's first assignment of error is that the trial court erred in applying the legal standard set forth in R.C. 2151.42(B) to Grandparents' motion.  She asserts that, before addressing the best interest of the child, rather than requiring Grandparents to prove a change in circumstances under the statute, the trial court instead should have required them to prove Mother's "unsuitability" under the common law standard set forth in *In re Hockstok*, 2002-Ohio-7208, syllabus.  In her second assignment of error, Mother argues that, even if the court applied the correct legal standard, Grandparents failed to demonstrate the requisite change in circumstances.

**{¶15}** We begin by quoting the legal standard applied by the trial court.  As requested in Grandparents' motion, the trial court applied the legal standard set forth in R.C. 2151.42(B), which provides, in relevant part:

> A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

{¶16} Mother asserts that, because the juvenile court returned A.S. to the custody of her parents at the end of the prior dependency case, the court implicitly found them to be fit parents, despite the prior adjudication of her child. Therefore, she argues that Grandparents should have been required to prove that Mother was an unsuitable parent before the trial court had authority to place A.S. in the legal custody of a non-parent. *See Hockstock*, at syllabus. Although Mother's argument makes sense on its face, it is not supported by Ohio law. *See In re I.S.*, 2009-Ohio-6432, ¶ 20 (9th Dist.) (Carr, J., concurring).

{¶17} In *In re I.S.*, this Court addressed a similar situation in which the juvenile court had previously adjudicated the mother's children abused, neglected, and/or dependent; Mother complied with the requirements of the case plan; and the juvenile court ultimately returned the children to her custody and closed the case. 2009-Ohio-6432, at ¶ 3-5. Two years later, in the same juvenile court case, the non-parents who had previously been temporary caregivers for the children and were again concerned about the children's well-being, filed motions for a change of legal custody. *Id*. at ¶ 4. In ruling on the non-parents' motion, the trial court applied the parental "unsuitability" and best interest test, as explained above from *Hockstock* and more clearly set forth in *In re Perales*, 52 Ohio St.2d 89 (1977). *Id*. at ¶ 9.

{¶18} On appeal, this Court concluded that the trial court had applied the wrong legal standard to the motion for change of legal custody. *Id*. at ¶ 8. This Court emphasized that the juvenile court's authority in dependency, neglect, and abuse cases is governed by a "fairly comprehensive statutory scheme[,]" and that, under former R.C. 2151.353(E)(1) [current R.C. 2151.353(F)(1)], the court retains continuing jurisdiction over adjudicated children. *Id*. at ¶ 10, ¶ 14. This Court concluded that the juvenile court's authority to modify a prior order of legal custody is also delineated by statute, in R.C. 2151.42(B). *Id*. at ¶ 16.

{¶19}   Moreover, although not emphasized in *In re I.S.*, the language of R.C. 2151.42(B) explicitly refers to an order that granted legal custody and whether there has been a change in circumstances of the child or "person" who was granted legal custody.   The Ohio General Assembly could have, but did not, include language in the statute to distinguish between legal custody orders that return a child to the legal custody of her parents from ones that place the child in the legal custody of non-parents.

{¶20}   Mother does not attempt to distinguish the facts of this case from those of *In re I.S.*, as they are not legally distinguishable.   Consequently, the trial court was required to comply with the requirements of R.C. 2151.42(B).   Mother's first assignment of error is overruled.

{¶21}   Mother's second assignment of error is that, under the standard set forth in R.C. 2151.42(B), the trial court erred in finding that there had been a requisite change in circumstances to authorize the court to modify the prior order of joint legal custody to the parents.   She does not challenge the trial court's best interest determination, so this Court will focus its review on whether the trial court properly found that there had been a change in circumstances of A.S. or the parents (the persons granted shared legal custody) as required by R.C. 2151.42(B).

{¶22}   In a case such as this, in which the facts pertaining to the trial court's finding of a change in circumstances are primarily undisputed, this Court reviews the trial court's finding of a requisite change for an abuse of discretion.   *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph one of the syllabus.   Although *Davis* involved a change in circumstances under R.C. 3109.04(E), rather than R.C. 2151.42(B), the Ohio Supreme Court has emphasized that "the [change in circumstances] analysis under either statute would be similar." *In re Brayden James*, 2007-Ohio-2335, ¶ 26.

{¶23} As quoted above, R.C. 2151.42(B) required evidence that there had been change in circumstances of A.S. or the parents "based on facts that have arisen since the order was issued or that were unknown to the court at that time[.]" The modification of legal custody at issue in this appeal involved Grandparents' motion to the juvenile court to designate them as the legal custodians of A.S. rather than both parents, as most recently set forth in the order filed August 19, 2021. In that order, by agreement of the parties, the juvenile court continued A.S. in the shared legal custody of both parents, but designated Mother as the residential parent because Father was undergoing cancer treatment, his health was declining, and he was having difficulty meeting the child's daily needs.

{¶24} In addressing Grandparents' motion to modify the parents' shared legal custody of A.S., the trial court found the requisite change in circumstances under R.C. 2151.42(B) based on two changes regarding the parents and A.S. since the child was most recently placed in the shared legal custody of her parents in August 2021: Father had died, and Mother had married a man who potentially posed a threat to the safety and well-being of A.S. As will be explained below, the trial court did not abuse its discretion by concluding that these two changes, particularly when considered together, constituted the requisite changes in circumstances.

{¶25} The January 2024 death of Father was a significant change for both the parents and A.S. Mother's only argument about why Father's death did not constitute a sufficient change in circumstances is that the parties knew at the time of the 2021 order that Father was terminally ill, so his death was anticipated at that time. In other words, Mother asserts, without any legal authority and in contravention of the plain language of the statute, that the requisite change in circumstances must involve circumstances that arose after the prior order *and* were not known or anticipated at the time of the prior order. In fact, the plain language of R.C. 2151.42(B) requires

that the change in circumstances involve circumstances that were either unknown at the time of the prior order *or* arose after the prior order, but not both. *See Kenney v. Carroll*, 2017-Ohio-354, ¶ 11 (9th Dist.). Although the parties knew at the time of the 2021 legal custody order that Father was terminally ill, Father had not yet died.

{¶26} The facts are not disputed that Father, one of the joint legal custodians of A.S., had died since the 2021 order most recently placed A.S. in the shared legal custody of both parents. The record further reveals that Father had been primarily responsible for the daily care of A.S. for nearly five years when the legal custody hearing was held. By court order, Father had been named the child's primary caretaker from December 11, 2018, when she was placed in his temporary custody, until August 19, 2021, after he sought an emergency change because of his declining health.

{¶27} Even after the trial court designated Mother as the child's residential parent for school purposes in August 2021, A.S. lived with Mother for approximately two months. While A.S. lived with Mother, she often missed school or would fall asleep in class, her grades were poor, and she was facing truancy proceedings. After A.S. returned to live with Father, Father ensured that the child attended school and was proactive in obtaining a diagnosis and treating the child's attention deficit hyperactivity disorder.

{¶28} Although Mother disputed the reason that A.S. returned to live with Father, she did not dispute the fact that the child had, in fact, returned to live with Father shortly after Mother was designated as the child's residential parent. Father further testified that, while A.S. lived with him, Mother did not have regular contact with the child or provide much assistance in raising her. Mother did not dispute any of Father's testimony. Given that Father had been the primary caregiver of A.S. for the vast majority of the time that the parents had shared legal custody, his

death was clearly a significant change in the circumstances of A.S. and her legal custodians (Father and Mother).

{¶29} The facts are also not disputed that, since the 2021 order, Mother married a man named Mr. D. Mother asserts that her marriage to another man, in and of itself, does not constitute a change in circumstances, citing *Wyss v. Wyss*, 3 Ohio App.3d 412, 416 (10th Dist. 1982). In this case, however, Mother's marriage to Mr. D. involved circumstances that posed a threat to the safety and well-being of A.S. Unlike in *Wyss*, there was evidence before the trial court to demonstrate that Mr. D.'s presence in Mother's home involved "changed conditions" that were "substantiated, continuing, and [would] have a materially adverse effect upon the child." *Id.*

{¶30} Mr. D. has a lengthy history of criminal convictions including a conviction of gross sexual imposition against a female victim under the age of 13, several drug convictions, and convictions for domestic violence, assault, and theft offenses. At the time of the hearing, Mr. D. was out on bond while facing another, unspecified criminal charge.

{¶31} Regarding the sex offense conviction, A.S., a female, was then about the same age as Mr. D.'s victim. A.S. had informed her former counselor and the guardian ad litem that she did not feel safe around Mr. D. Nevertheless, Mother testified that she was not concerned about Mr. D. being around A.S. without supervision because the conviction was many years ago and Mr. D. did not look or act like a sex offender.

{¶32} In her brief on appeal, Mother suggests that CSB investigated whether Mr. D. posed a threat to A.S. in Mother's home and concluded that he did not, but that assertion is not supported by the record. Mother presented the testimony of a CSB intake caseworker who had investigated a referral in October 2023, about Mr. D. living in her home. At that time, A.S. was not living in Mother's home, so the agency's investigation did not involve A.S., but only Mother's other

children. The caseworker briefly testified that, after her investigation, she did not believe that Mr. D. posed an imminent risk to the safety of Mother's three sons, so CSB did not open a case. The caseworker's investigation and testimony had no bearing on whether Mr. D. living in a home with A.S., a female child close to the age of his prior victim, would pose a risk to the child.

{¶33} Moreover, because Mr. D. was a convicted sex offender, he was not permitted to live in Mother's public housing apartment, under the explicit terms of her lease. The property manager from the apartment complex testified that she repeatedly warned Mother that Mr. D. could not be on the premises, but he continued living there. Consequently, she notified Mother that she would be evicted from the apartment. Shortly before the hearing, Mother relocated to another home before the eviction proceedings began. A.S. had never been to that home and no evidence was presented about its suitability, except Mother's testimony that it had three bedrooms.

{¶34} In addition to Mr. D.'s prior conviction of a sex offense against a young female victim, he had numerous other criminal convictions including felony domestic violence, assault, and drug offenses, all of which potentially posed further threats to the well-being of A.S. There was no evidence about current violent acts by Mr. D., but there was evidence about recent drug use. Mr. D. was facing more recent criminal charges for an unspecified offense. Mother testified that Mr. D. was on pretrial release and was required to submit to drug testing. She admitted that he had recently tested positive for cocaine, which did not seem to concern her. Mother testified that she had not used drugs for several years, but she had worked for nearly two years to obtain and maintain sobriety in the dependency case involving A.S. The trial court reasonably noted its concern about Mr. D.'s recent drug use, as his drug use not only posed a threat to A.S. but also threatened Mother's ongoing sobriety.

**{¶35}** The undisputed evidence before the trial court demonstrated that A.S. had suffered the loss of Father, who had been her primary caretaker for several years; Mother had not taken an active role in caring for A.S. to demonstrate that she could provide appropriate care for the child without Father's help; and Mother had recently married a man who posed a threat to the safety and well-being of A.S. for several reasons. Consequently, the trial court did not abuse its discretion by finding that there had been a sufficient change in circumstances of the parents and A.S. under R.C. 2151.42(B). Mother's second assignment of error is overruled.

## III.

**{¶36}** Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

JOSEPH SHELL, Attorney at Law, for Appellant.

RONALD T. GATTS, Attorney at Law, for Appellees.