[Cite as *In re A.G.*, 2026-Ohio-26.]

STATE OF OHIO )
)ss:
COUNTY OF SUMMIT )

IN THE COURT OF APPEALS
NINTH JUDICIAL DISTRICT

IN RE: A.G., M.G., L.G., Ma.G., Le.G., Au.G.

C.A. Nos.   31490, 31491, 31492, 31493, 31494, 31495, 31521, 31522, 31523, 31524, 31525, 31526

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.   DN 20 09 0564
DN 20 09 0565
DN 20 09 0566
DN 20 09 0567
DN 20 09 0568
DN 22 11 0953

DECISION AND JOURNAL ENTRY

Dated: January 7, 2026

STEVENSON, Judge.

{¶1} Appellants, K.C. ("Mother") and M.G. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights to their six minor children and placed the children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother and Father are the biological patents of A.G., born November 22, 2012; M.G., born November 5, 2014; L.G., born January 5, 2016; Ma.G., born February 10, 2017; Le.G., born September 15, 2018; and Al.G., born October 29, 2022. Mother and Father are not married, but they have lived together as a couple for many years.

{¶3} According to stipulated facts in the record, Mother and Father and the four oldest children had prior juvenile cases with CSB during July 2018, in which the juvenile court adjudicated A.G., M.G., L.G., and Ma.G. abused, neglected, and dependent because of their exposure to domestic violence and the deplorable conditions of the family home. The children were later placed in their parents' legal custody under an order of protective supervision. That case was closed during December 2018.

{¶4} On September 8, 2020, prior to the birth of Al.G., CSB filed complaints to allege that L.G. was abused and that all five children were neglected and dependent because of Father's excessive physical discipline of L.G., Father's history of perpetrating domestic violence against others in the home, Mother's untreated bipolar disorder, and the deplorable condition of the home. The parents later waived their rights to adjudicatory hearings and agreed that L.G. was abused and dependent and that their other four children were dependent. The trial court adjudicated them accordingly, placed them in the temporary custody of CSB, and adopted the case plan as an order of the court.

{¶5} Shortly after the October 2022 birth of the parents' youngest child, Al.G., CSB filed a complaint to allege that she was also a dependent child because of the concerns adjudicated in the other children's ongoing cases. The trial court adjudicated Al.G. dependent but, because Mother had been making progress on the case plan in the older children's cases, the court allowed Al.G. to remain in Mother's legal custody under an order of protective supervision.

{¶6} CSB initially moved for permanent custody of the five oldest children, but the trial court denied that motion on January 23, 2023. It reasoned that the parents had substantially complied with the reunification requirements of the case plan and that it was in the children's best

interest to be placed in the legal custody of Father. The trial court placed the five oldest children in Father's legal custody under an order of protective supervision.

{¶7} During April 2023, the trial court terminated protective supervision of all six children and closed their cases. The trial court's final orders placed the youngest child in Mother's legal custody and the older children in Father's legal custody, but all parties were aware at that time that Mother and Father resided together with the children in the same home.

{¶8} On December 21, 2023, CSB filed motions in each child's case to "MODIFY [THE] DISPOSITIONAL ORDER [OF] LEGAL CUSTODY" to the parent who held legal custody of each child. The agency alleged that, since the trial court terminated protective supervision of each child, it had received referrals about the children's poor hygiene when they came to school. Upon investigation, CSB discovered that Mother was no longer engaged in mental health treatment, and that she was the primary caretaker of the home and the children while Father worked, but that she was unable to meet the basic needs of the children without assistance. The agency alleged a lack of supervision of the children, significant hygiene concerns about them, and that the home was filthy. It explained that the home had sticky floors, trash, and flies everywhere, and that there were numerous animals in the home that contributed to its poor condition. The agency further alleged that the Summit County Humane Society planned to remove the family's animals because of the unsuitable condition of the home.

{¶9} The same day, the trial court issued an ex parte order to remove the children from their parents' custody and place them in CSB's emergency temporary custody. In the same order, it scheduled a "motion hearing" for the next day. Before the scheduled hearing, with the assistance of counsel, each parent executed a written "WAIVER OF TRIAL RIGHTS" form, by completing and signing the Summit County Juvenile Court's preprinted form designed for, and specifically

identified as, a parent's waiver of his or her right to a contested dispositional hearing. The magistrate later filed decisions that placed all six children in CSB's temporary custody. The trial court adopted the dispositional decisions the same day. Neither parent objected to the children's temporary custody decisions.

{¶10} On April 2, 2024, CSB moved for permanent custody of these children. Father later moved to dismiss the permanent custody motion and the children's cases. Mother joined in that motion. The argument for dismissal was that the trial court had violated the parents' constitutional rights and exceeded its continuing subject matter jurisdiction when it removed the children from their legal custody and placed them in CSB's temporary custody without CSB filing a new complaint and the trial court conducting a new adjudication of the children. The trial court denied the motion to dismiss, reasoning that it had continuing subject matter jurisdiction under R.C. 2151.353(F) because the court had previously adjudicated these children dependent.

{¶11} At the permanent custody hearing, the parents renewed the motion to dismiss, again arguing that the trial court improperly reopened this case in December 2023, because there had been no new complaint or adjudication of the children. The trial court again denied their motion to dismiss. Following an evidentiary hearing, the trial court terminated parental rights and placed A.G., M.G., L.G., Ma.G., Le.G., and Al.G. in the permanent custody of CSB.

{¶12} Mother and Father appeal and each raise two assignments of error. This Court will consolidate some of their assignments of error to facilitate review.

II.

## FATHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN
ERROR IN DENYING FATHER'S MOTION TO DISMISS.

**MOTHER'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY ABSENT SOME DETERMINATION THAT THE CHILDREN'S PARENTS WERE UNSUITABLE.

**MOTHER'S ASSIGNMENT OF ERROR II**

THE COURT ERRED IN FAILING TO EXPLICITLY DETERMINE THAT THE CHILDREN OR PARENT'S CIRCUMSTANCES HAD CHANGED.

{¶13} This Court must emphasize that the parents do not assign error to the evidentiary merits of the permanent custody decision. Instead, these assigned errors challenge the procedure followed in December 2023 when CSB reopened the children's dependency cases and the trial court removed the children from their home and placed them in CSB's temporary custody. This Court will first address their arguments about the legal standard that the trial court was required to apply when it terminated the prior legal custody orders in this case. Next, this Court will determine whether Mother preserved her challenge to the trial court's application of that legal standard for review in this appeal.

**Legal Standard**

{¶14} Both parents assert through their first assignments of error that, because the trial court returned the children to the legal custody of either Mother or Father and closed their cases in April 2023, the trial court implicitly found them to be "suitable" parents again, despite the earlier adjudications of the children as dependent children. Therefore, they assert that the trial court had authority to reopen the children's dependency cases only if CSB filed new complaints and the trial court again adjudicated the children as abused, neglected and/or dependent or otherwise found the parents to be unsuitable under common law. *See*, *e.g.*, *In re Hockstok*, 2002-Ohio-7208, ¶ 17.

{¶15} The parents suggest that the juvenile court exceeded its continuing jurisdiction in this case, but the reopening of this case was explicitly within the subject matter jurisdiction of the

trial court. "Article IV, Section 4(B) of the Ohio Constitution provides that '[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters . . . as may be provided by law.' Therefore, the general subject-matter jurisdiction of Ohio courts of common pleas is defined by the legislature." *In re K.K.*, 2022-Ohio-3888, ¶ 52. R.C. 2151.23(A)(1) grants the juvenile court exclusive original jurisdiction over these six children because they were alleged to be dependent in the complaints that CSB filed in September 2020 and October 2022.

{¶16} After the trial court adjudicated these children dependent and ultimately entered the legal custody dispositional orders under R.C. 2151.353(A)(3), it retained continuing jurisdiction over them until they are emancipated or adopted. R.C. 2151.353(F)(1). Furthermore, R.C. 2151.353(F)(2) grants "[a]ny public children services agency" explicit authority "at any time" to "request the court to modify or terminate any order of disposition" issued pursuant to R.C. 2151.353(A) "by filing a motion with the court[.]"

{¶17} R.C. 2151.353(F)(2) further provides that "[t]he court shall hold a hearing upon the motion [to modify a dispositional order] as if the hearing were the original dispositional hearing and . . . [i]f applicable, the court shall comply with [R.C.] 2151.42[.]" This language clearly authorized CSB to file a motion to modify any prior order of disposition, including the prior final orders of legal custody to Mother or Father. In fact, the trial court's statutory authority to modify prior dispositional orders makes explicit reference to R.C. 2151.42, "if applicable[.]"

{¶18} R.C. 2151.42(B) provides:

An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature. *A court shall not modify or terminate an order granting legal custody* of a child *unless it finds,* based on facts that have arisen since the order was issued or that were unknown to the court at that time, *that a change has occurred in the circumstances of the child*

*or the person who was granted legal custody*, and that modification or termination of the order is necessary to serve the best interest of the child.

(Emphasis added.) Under its continuing jurisdiction over an existing dependency case, a juvenile court has authority to modify or terminate a prior order of legal custody to "a person" (including a parent) as set forth in R.C. 2151.42(B). *In re A.S.*, 2025-Ohio-1349, ¶ 19-20 (9th Dist.).

{¶19} As Mother's brief recognizes, this Court addressed and rejected a similar "suitability" argument in *In re A.S.* at ¶ 16-20 (9th Dist.), based on the explicit language of R.C. 2151.42(B) and this Court's prior reasoning set forth in *In re I.S.*, 2009-Ohio-6432 (9th Dist.). *In re A.S.* also involved a dependency case that was reopened after a child was returned to the parents' legal custody and the case was closed. 2025-Ohio-1349, at ¶ 12 (9th Dist.). In that case, however, the trial court found a change of circumstances under R.C. 2151.42(B), but Mother argued on appeal that it should have instead found Mother to be unsuitable. This Court found no support for such an argument under established Ohio law. Consequently, this Court concluded that the applicable standard is set forth in R.C. 2151.42(B). *Id*. at ¶ 20.

{¶20} This Court's decision in *In Re A.S.* is currently pending before the Ohio Supreme Court on this issue as both a discretionary appeal and a certified conflict. *See* Ohio Supreme Court case numbers 2025-1224 and 2025-1225. Until the Ohio Supreme Court decides this legal issue, this Court will continue to apply its prior precedent based on the clear language of the statutes involved.

{¶21} Consequently, before modifying or terminating the prior orders of legal custody to the parents, in addition to considering the children's best interest, R.C. 2151.42(B) required the trial court to find a change of circumstances of the children or the legal custodians. Mother is the only party who has alternatively assigned error to the trial court's failure to explicitly apply the R.C. 2151.42(B) standard when it removed the children from the parents' legal custody and placed

them in the temporary custody of CSB. The record submitted to this Court supports Mother's assertion that the trial court made no explicit finding of the requisite change of circumstances in its December 2023 temporary custody order, but Mother raises this issue for the first time on appeal. Moreover, Mother did not request a transcript of the hearing before the Magistrate, so the record is incomplete. Therefore, this Court will next address whether Mother preserved this issue for appellate review.

### Waiver/Forfeiture

{¶22} Mother asserts that the trial court's failure to apply the R.C. 2151.42(B) legal standard to terminate or modify a prior order of legal custody is an issue of law that need not be preserved for appellate review and cannot be waived or forfeited by the appellant. She relies primarily on this Court's decision in *In re I.S.*, 2009-Ohio-6432, ¶ 8 (9th Dist.), in which the appellant did not raise the applicability of R.C. 2151.42(B) in the trial court or on appeal. Nevertheless, this Court raised this issue sua sponte because it was "obvious that the trial court applied the wrong legal standard." *Id*. at ¶ 8. However, since the *In re I.S.* decision, this Court has recognized that a challenge to the trial court's failure to apply the R.C. 2151.42(B) change of circumstances standard is not preserved for appeal if it was not properly raised in the trial court. *See In re N.G.*, 2012-Ohio-2825, ¶ 14 (9th Dist.).

{¶23} In addressing whether Mother preserved this issue for appellate review, we begin by comparing the distinct concepts of waiver and forfeiture. An affirmative waiver is the "intentional relinquishment or abandonment of a right" and will not be recognized on appeal even as plain error. *State v. Payne*, 2007-Ohio-4642, ¶ 23. Forfeiture, on the other hand, "is a failure to preserve an objection" and does not extinguish a claim of plain error. *Id*. CSB has argued on appeal that Mother affirmatively waived this issue because she executed a written waiver of the

temporary custody hearing in December 2023. The trial court also questioned Mother to ascertain that she had knowingly, voluntarily, and intelligently executed her waiver of the dispositional hearing.

{¶24} As noted already, Mother executed the juvenile court's preprinted form for waiving her right to a dispositional hearing. Because she completed the standard form, which appears to be designed for a parent's waiver of a dispositional hearing following adjudication, the form refers only to a waiver of the requirement that the agency prove that the disposition is in the children's best interest. Notably, the standard form does not mention any requirement that CSB prove a change of circumstances since the prior dispositional order. This Court is reluctant to construe the written waiver executed by Mother as affirmative waiver of the requirement that CSB prove, and the trial court find, a change of circumstances under R.C. 2151.42(B).

{¶25} Assuming without deciding Mother may not have affirmatively waived this issue for appellate review, the record is clear that she forfeited the issue by failing to object to the magistrate's dispositional decision or to raise this issue at any time prior to the permanent custody decision. After the magistrate issued the dispositional decision, which failed to explicitly find the requisite change of circumstances, Mother had the opportunity to file a timely, written objection but she did not. Had she filed an objection, the trial court could have resolved this issue in a timely manner. Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error," a party shall not assign error to the trial court's adoption of a magistrate's decision unless the party has filed proper objections.

{¶26} Mother has failed to demonstrate that the trial court's failure to explicitly apply the change of circumstances set forth in R.C. 2151.42(B) rose to the level of plain error in this case. This Court has not yet determined whether the criminal or civil plain error standard applies to

permanent custody appeals. *In re Z.S.*, 2021-Ohio-2022, ¶ 9 (9th Dist.), citing *In re K.J.*, 2019-Ohio-123, ¶ 11 (9th Dist.). Under either standard, however, it would be Mother's burden to demonstrate a significant amount of prejudice that either amounted to a "manifest miscarriage of justice" or "challeng[ed] the legitimacy of the underlying judicial process itself." *In re Z.S.* at ¶ 8 (9th Dist), quoting *In re S.G.*, 2015-Ohio-2503, ¶ 11 (9th Dist.). In her brief on appeal, Mother asserts that, "but for the error, the outcome of the trial would have been different[.]" Nevertheless, she has failed to demonstrate that, had the trial court held a contested hearing after the reopening of this case and explicitly applied the R.C. 2151.42(B) standard, it could not have found the requisite change of circumstances based on the allegations in CSB's motion to modify. *See In re E.H.*, 2023-Ohio-470, ¶ 17 (1st Dist.). Because the parents have failed to demonstrate reversible error in the trial court's initial disposition that placed the children in CSB's temporary custody, Mother's assignments of error and Father's first assignment of error are overruled.

## FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN NOT GRANTING A CONTINUANCE WHEN REQUESTED BY FATHER'S COUNSEL.

{¶27} Father's second assignment of error is that the trial court erred when it denied his oral request for a continuance of the permanent custody hearing because he and Mother were still facing criminal charges at the time the hearing commenced. Pursuant to Juv.R. 23, "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." The decision to grant or deny a continuance lies within the sound discretion of the trial judge, which requires a balancing of "any potential prejudice to a [party against] concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).

{¶28} To control the flow of its docket and avoid unnecessary delay and prejudice to the parties, counsel, and witnesses who appear for scheduled hearings, the Summit County Juvenile Court has also adopted local rules about when and why the court will exercise its discretion to grant a continuance of a scheduled hearing. Loc.R. 5.03(B) provides that, absent demonstration of an emergency or unforeseen circumstances, "[a]ll requests for continuances must be made in writing and filed seven days before the scheduled hearing date." Loc.R. 5.03(A) further provides that a continuance will be granted only if the requesting party demonstrates an emergency or unforeseen circumstance. "Absent such a circumstance, the hearing or trial shall proceed as scheduled." *Id*.

{¶29} In this case, Father's counsel did not file a timely, written request for a continuance, nor did he demonstrate an emergency or unforeseen circumstance that would have justified continuance of the scheduled hearing. The parties knew that the parents would still be facing criminal changes at the time of the scheduled permanent custody hearing, so Father's counsel should have filed a timely, written request for a continuance. Because Father did not file a timely request and did not demonstrate an emergency of unforeseen circumstances, the trial court did not abuse its discretion in denying Father's request for a continuance of the permanent custody hearing. Father's second assignment of error is overruled.

III.

{¶30} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
CONCURS.

FLAGG LANZINGER, P. J.
DISSENTING.

{¶31} I respectfully dissent from the majority opinion because I do not agree that the R.C. 2151.42(B) change of circumstances standard should apply under the circumstances of this case. Although I concurred in this Court's decision in *In re A.S.*, 2025-Ohio-1349 (9th Dist.) that R.C. 2151.42(B) was the appropriate standard to apply in that case, the facts of this case are sharply distinguishable.

{¶32} To begin with, in *In re A.S.*, the trial court actually applied the R.C. 2151.42(B) standard to the facts of the case and found that CSB had proven the requisite change of circumstances because the father, the children's primary custodian, had recently died; the mother had not taken on a primary role in raising the child; and environmental factors in the mother's home posed a significant risk to the child. *Id*. at ¶ 23-35. In the case currently before this Court, it is clear from the record that CSB did not allege, and the trial court did not find, a change of circumstances under R.C. 2151.42(B). There is no indication in the record on appeal that R.C. 2151.42(B) or its legal standard were even considered at the time the children were placed in CSB's temporary custody and the prior final orders of legal custody to the parents were terminated.

{¶33} More significantly, unlike the facts of *In re A.S.*, the reopening of this case was not initiated by relatives who were seeking legal custody of the child. *Id*. at ¶ 16-20. CSB sought to reopen this case, and it was not seeking a change in legal custodians. Instead, after receiving temporary custody based merely on an agreement about the children's best interest, CSB moved for permanent custody less than four months later. Permanent custody proceedings have been described as "the family law equivalent of the death penalty" and Ohio courts have long emphasized that parents "must be afforded every procedural and substantive protection the law allows." (Internal quotations and citations omitted). *In re C.W.*, 2004-Ohio-6411, ¶ 23. In this case, because the trial court did not find a change of circumstances under R.C. 2151.42(B), these parents were afforded no procedural protection prior to their children being removed and placed in CSB's temporary custody.

{¶34} I agree that the juvenile court maintained continuing subject matter jurisdiction over these children after it returned them to the legal custody of one of their parents and closed this case. Nevertheless, I agree with Father's argument that the court implicitly found that the parents

were able to parent their children at that point. CSB must have an obligation to demonstrate to the juvenile court that there was an adequate reason to reopen this case, lest there be a revolving door in and out of this family's life.

{¶35} The majority concludes that the change of circumstances standard set forth in R.C. 2151.42(B), if applied here, would have protected the parents' fundamental rights. I believe that R.C. 2151.27(C), which authorized CSB to file new complaints to allege abuse, neglect, or dependency, is more appropriately tailored to these circumstances than R.C. 2151.42(B), as applied in this court's prior cases. Given that the apparent goal of CSB was to reopen this case so it could seek permanent custody of these children, it should have filed a new complaint and sought permanent custody as its initial disposition of the children. *See* R.C. 2151.27(C). Had it done so, the parents' constitutional rights would have been protected because CSB would have been required to prove, by clear and convincing evidence, that the children were abused, neglected, or dependent. For these reasons, I respectfully dissent.

APPEARANCES:

ANDREW KARAS, Attorney at Law, for Appellant.

SHUBHRA AGARWAL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AARON B. CAMPBELL, Assistant Prosecuting Attorney, for Appellee.

NOWAR KATIRJI, Attorney at Law, for the Children.

JAMES E. BRIGHTBILL, Guardian ad Litem.